BANK OF AMERICA NATIONAL
TRUST AND SAVINGS
ASSOCIATION, Plaintiff,

v.

Melvin FOGLE and Claris
FOGLE, Defendants.

No. C–85–2807 WHO.

United States District Court,
N.D. California.

Dec. 23, 1985.

Randolph L. Howard, Joseph N. Demko, Frandzel & Share, San Francisco, Cal., for plaintiff.

Bernd ter Glane, Hamburg, Germany, of counsel, John E. Droeger, Hall, Henry, Oliver & McReavy, San Francisco, Cal., Stokes, Steeves, Jensen & Cissna, Arcata, Cal., for defendants.

## OPINION AND ORDER

ORRICK, District Judge.

■ This is an action for a deficiency judgment on a promissory note secured by a preferred ship mortgage on a vessel known as the "Oil Screw Amigo". On April 15, 1980, defendants, Melvin and Claris Fogle, executed the promissory note in favor of plaintiff, Bank of America (the "Bank"). On April 15, 1981, after defendants had failed to make their semiannual payment, the Bank declared the note in default and demanded full payment of principal, interest, attorney's fees, and costs. On July 1, 1982, defendants surrendered possession of the vessel to the Bank, which on March 7, 1983, sold it at a private sale. The Bank contends that it complied with the procedures set forth in § 9504(3) of the California Commercial Code (governing private foreclosure sales) and, therefore, is entitled to a deficiency judgment under 46 U.S.C. § 954 for $31,096.67 plus interest, attorney's fees, and costs. Defendants concede that the Bank complied with the California procedures regarding private sales. However, they insist that federal law (28 U.S.C. § 2001(b)), not state law, governs private foreclosure sales in admiralty. Defendants further contend that the Bank failed to comply with § 2001(b) and, therefore, that the Bank is barred from recovering any deficiency judgment. The Bank does not deny that it failed to comply with the requirements of § 2001(b). The case is before the Court on defendants' motion to dismiss, which will be treated as a motion for summary judgment under Rule 12(b) of the Federal Rules of Civil Procedure because of defendants' introduction of certain supporting documents. For the reasons hereinafter stated, the motion is granted.

## I

■ At the outset, this Court affirms the elementary proposition that federal law (specifically, the Ship Mortgage Act of 1920, 46 U.S.C. § 911, *et seq.*) governs all preferred ship mortgages and foreclosures thereon. Section 951 of Title 46, U.S.C. states the proposition plainly:

> A preferred mortgage shall constitute a lien upon the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by such vessel. * * * Original jurisdiction of all such suits is granted to the district courts of the United States exclusively.

As stated by Chief Justice Hughes in his opinion for the Court in *Detroit Trust Co. v. The Thomas Barlum*, 293 U.S. 21, 42, 55 S.Ct. 31, 37, 79 L.Ed. 176 (1934):

> It is also to be noted that the jurisdiction granted to the admiralty by the Ship Mortgage Act is exclusive. If a mortgage is within the Act, there can be no suit to foreclose it in a state court; if the mortgage is not within the Act, there can be no suit for foreclosure in the admiralty.

(Footnote omitted.) The *Barlum* Court also quoted the House managers who had shepherded the Ship Mortgage Act through Congress:

> The amendment as agreed to further places exclusive jurisdiction in the Federal courts to foreclose vessel mortgages upon the grant of admiralty jurisdiction instead of the provisions of the Constitution relating to diversity of citizenship and cases arising under the laws of the United States.

*Id.* at 40, n. 5, 55 S.Ct. at 37, n. 5. *See also J. Ray McDermott & Co. v. Vessel Morning Star*, 457 F.2d 815, 818 (5th Cir.) *cert. denied,* 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 218 (1972). *Cf. McCorkle v. First Pennsylvania Banking & Trust Co.*, 459 F.2d 243 (4th Cir.1972) (under *Barlum*, nonpreferred ship mortgages cannot be enforced in admiralty).

■ The Bank apparently concedes that the Ship Mortgage Act must be regarded as controlling where it makes pronouncements. However, the Bank contends that if the Act is *silent* on any particular issue, state law can be used to "fill the gaps" in the federal statutory scheme. In particular, the Bank contends that the Act is silent on the question of whether mortgagees are

permitted private foreclosure sales, and, therefore, that the Bank was free to contractually "reserve" the right to invoke § 9504(3) of the California Commercial Code, providing a right to nonjudicial private foreclosure sales.

Whether state law can or should be applied interstitially to create a comprehensive statutory scheme governing preferred ship mortgages is a question dealt with below, in the course of resolving a further issue. As regards a mortgagee's right to a private foreclosure sale, however, the Ship Mortgage Act most assuredly is *not* silent on the availability of such private sales procedures. The Act makes such private sales available to mortgagees under 28 U.S.C. § 2001(b). The Bank contends that § 2001(b) only makes provision for *judicially-approved* private sales; that it says nothing about private sales conducted without court approval; and therefore that state law may be read to authorize such extrajudicial private sales. This contention is plainly without merit. It is more than slightly disingenuous to say that when a statute specifically authorizes a specific, detailed procedure for something, that statute is to be deemed "silent" on the question of whether some entirely different procedure can be substituted for it. Section 2001(b) authorizes private sales so long as certain requirements are met. One of those requirements is court approval. By specifically and explicitly requiring judicial approval for private sales, Congress obviously meant to disapprove of extrajudicial private sales. There is, therefore, "simply no room for the operation of state law" on the issue of whether extrajudicial private sales are permissible. *Harrison Overseas Corp. v. American Barge Sun Coaster,* 475 F.2d 504, 506 (5th Cir.1973). The Bank's purported "reservation" of the right to apply state law contrary to federal law is, of course, completely without effect. The validity of the Bank's private foreclosure sale will be determined under § 2001(b) alone.

## II

Section 2001(b) of Title 28, United States Code, governs the sale of realty under the authority of federal courts. Section 2001(b) is made applicable to the sale of personalty by § 2004. Section 2001(b) provides in pertinent part:

[T]he court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves * * *. Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property * * *. No private sale shall be confirmed at a price less than two-thirds of the appraised value. Before confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale.

As mentioned above, it is uncontroverted that the Bank failed to comply with § 2001(b). The dispositive question is how this failure affects the mortgagee's right to recover a deficiency judgment. The legal effect of the mortgagee's failure to comply with § 2001(b) will, of course, be determined by federal law. *Walter E. Heller & Co. v. O/S Sonny V.,* 595 F.2d 968, 971 (5th Cir.1979). Section 2001(b) does not, however, specify what follows from a failure to comply with its requirements; thus, federal *common law* must determine the effect of the failure on the mortgagee's right to a deficiency judgment. And, because the Court is unaware of any cases that state how a failure to comply with the requirements of § 2001(b) affects a mortgagee's right to recover a deficiency judgment under 46 U.S.C. § 954, the Court is faced with the task of developing the federal common law in this area.

In answer to the question raised earlier, this Court believes that state law can and should be applied interstitially to

govern the legal effect of a failure to comply with § 2001(b). The issue did not need to be resolved in the context of whether a mortgagee had a right to a private foreclosure sale under state law because the federal statute, § 2001(b), spoke clearly on the matter. Section 2001(b) plainly grants mortgagees a right to a private sale, subject to certain requirements. There was no need to use state law as a "gap filler" because there was no gap to fill. It is only when the federal statute is completely silent on a particular question that the courts may look to state law for interstitial application.

As noted above, § 2001(b) is truly silent on the legal effect to be accorded a failure to comply with the private sale in this case California law procedures. Therefore, "the logical place to look is state law," *Bergren v. Davis*, 287 F.Supp. 52, 55 (D.Conn.1968). As stated by the court in *Southland Financial Corp. v. Oil Screw Mary Evelyn*, 248 F.Supp. 520, 522 (E.D.La.1965):

> There is no Federal law of mortgages except such as is contained in specific statutes such as the Ship's Mortgage Act. Where voids appear, it is necessary for the Court to look to other sources for its answers. While the Federal Court may not be bound by State law in such an instance, nevertheless, the State law is the logical place to look for guidance.

*Cf. Merchants & Marine Bank v. The T.E. Welles*, 289 F.2d 188, 194 (5th Cir.1961) ("the approach ought to be one of harmony with usual security principles"). *See also,* G. Gilmore & C. Black, *The Law of Admiralty* (2d ed.) 721.

### III

■ California law is clear: a mortgagee is not entitled to a deficiency judgment if he has failed to conform to the statutory procedure governing private foreclosure sales. *In re Carter*, 511 F.2d 1203, 1204 (9th Cir.1975); *Western Decor & Furnishings Industries, Inc. v. Bank of America*, 91 Cal.App.3d 293, 306–08, 154 Cal.Rptr. 287, 293–95 (1979); *Atlas Thrift Co. v. Horan*, 27 Cal.App.3d 999, 1009, 104 Cal.

Rptr. 315, 321 (1972). The *Atlas Thrift* court stated the rule plainly:

> The rule and requirement are simple. If the secured creditor wishes a deficiency judgment he must obey the law. If he does not obey the law, he may not have his deficiency judgment.

*See also General Electric Credit Corp. v. Bo-Mar Construction Co.*, 72 Cal.App.3d 887, 891, 140 Cal.Rptr. 417, 419–20 (1977); *J.T. Jenkins Co. v. Kennedy*, 45 Cal. App.3d 474, 481, 119 Cal.Rptr. 578, 583 (1975).

■ It is true that in *Carter, Western Decor,* and *Atlas Thrift*, the mortgagee had failed to give notice under § 9504(3) of the California Commercial Code, whereas in the instant case, notice of the private sale was mailed to defendants. Again, however, it must be emphasized that compliance with § 9504(3) is not the question. Section 2001(b) requires much more than notice to the mortgagor. Section 2001(b), *inter alia*, requires the appointment of disinterested appraisers, prohibits confirmation of any sale for less than two-thirds of the appraised value, requires publication of the sale in a newspaper of general circulation, and prohibits confirmation if a bona fide offer would produce at least a ten percent increase over the private sale price. These are important procedural protections that Congress has seen fit to accord mortgagors, and in this case they have been denied to defendants. *Carter, Western Decor,* and *Atlas Thrift* do not merely stand for the proposition that failure to give notice bars a deficiency judgment. Those cases stand for the general proposition that *all* important statutory procedures must be followed before a mortgagee can be allowed its deficiency judgment. In short, it must "obey the law." The Bank failed to obey the law. Accordingly,

IT IS HEREBY ORDERED that defendants' motion for summary judgment is granted.