Leslie S. **DIETRICH**, Plaintiff,

v.

**KEY BANK, N.A., et al., Defendants.**

No. 87–8407–Civ.

United States District Court,
S.D. Florida.

Aug. 19, 1988.

James A. Bonfiglio, Palm Beach, Fla., for plaintiff.

Robert McIntosh, Fort Lauderdale, Fla., for defendants.

## OMNIBUS ORDER

ARONOVITZ, District Judge.

THIS CAUSE came before the Court upon the plaintiff's, Leslie S. Dietrich ("Dietrich"), motion for partial summary judgment on defendant Key Bank, N.A.'s ("Key Bank") counterclaim for deficiency judgment, upon the Court's *sua sponte* reconsideration of its November 6, 1987 order denying plaintiff's motion for partial summary judgment against Key Bank, upon plaintiff's July 5, 1988 motion for summary judgment against defendant Gilman Yacht Brokers ("Gilman"), upon defendant Cracker Boy Marina, Inc.'s motion to dismiss Count III, and upon defendant Jeffrey Shearer's motions to dismiss and quash service.

THE COURT has considered the motions, the arguments of counsel at a hearing held on plaintiff's motions against Key Bank, the pertinent portions of the record, and is otherwise fully advised in the premises.

### Factual Background

The facts of this case are not in dispute for present purposes. Plaintiff's memorandum provides a statement of the facts, which defendant Key Bank accepts as true. Dietrich purchased the vessel "Que Passa,' renamed "Sea Fire," in April, 1982. She executed a $97,300.00 promissory note to Yegen Associates, Inc., secured by a chattel mortgage security agreement. On August 31, 1983, plaintiff executed a First Preferred Ship Mortgage. Key Bank, as assignee of the mortgage, recorded it with the United States Coast Guard Office in Miami, Florida on November 10, 1983.

Plaintiff defaulted on the note in the summer of 1986. Key Bank accelerated the note and hired defendant Gilman to repossess the vessel. Gilman did just that in December, 1986, seizing it from storage at defendant Cracker Boy Marina. On January 29, 1987, Key Bank notified plaintiff that it intended to sell the vessel by private sale after February 12, 1987. On February 25, 1987 defendant Jeffrey Shearer purchased the vessel for $40,000.00.

### Key Bank's position

Key Bank freely admits that it did not comply with the procedures for foreclosing a ship mortgage established under 46 U.S.C.App. sec. 911, *et seq.* 28 U.S.C. sec. 2001 governs the sale of a vessel in a Ship Mortgage Act foreclosure, and it provides that no vessel may be sold at a private sale unless the court appoints three disinterested appraisers and the vessel is sold for at least two-thirds of the appraised value. But Key Bank contends that federal law does not prevent the parties to a ship mortgage from contractually agreeing that the federal procedures for foreclosure need not be used.

Key Bank identifies certain contractual provisions in the security agreement and the ship mortgage which it contends permitted it to seize and sell the vessel extrajudicially. Paragraph 18 of the security agreement provides that the holder "can take the vessel without my permission and without any court order." This paragraph continues as follows:

In performing the repossession and in otherwise holding and disposing of the vessel after repossession, [defendant] shall have all rights of a secured party under the Florida Uniform Commercial Code, except as those rights and remedies are changed by this Security Agreement and related Promissory Note. All of your rights and remedies will be cu-

mulative. You will not have to make any exclusive selection between them.

Key Bank also relies upon the ship's mortgage itself, which at paragraph 20 provides that "subject to any applicable state regulation, [Key Bank is] irrevocably appointed my true and lawful attorneys-in-fact to make all necessary transfers of the Vessel upon resale after repossession, in my name and stead." Key Bank contends that both the security agreement and the ship's mortgage evidence the parties' contractual agreement to grant the mortgagee the option to use self-help under Florida law.

Key Bank also advances the argument that Dietrich voluntarily permitted the bank to repossess the vessel. The premise of this argument is that Dietrich affirmatively consented to Key Bank's repossession, and that therefore she cannot now claim conversion. Key Bank proffers Dietrich's voluntary relinquishment of the vessel as an independent and alternative basis for both its defense and deficiency claim.

### Gilman's position

Key Bank authorized defendant Gilman to repossess the vessel from the Cracker Boy Marina, and thereafter to solicit bids for the sale of the vessel. Gilman's position in defense Dietrich's motion for partial summary judgment on Count II for conversion is that it was acting as Key Bank's agent in all respects. Consequently, Gilman "realleges and relies on the arguments of Key Bank as set forth in the Memorandum in opposition to Plaintiff's Motions for Summary Judgment against Key Bank."

### Dietrich's contentions

Plaintiff's position is that federal law provides the exclusive manner of foreclosing a ship's mortgage, and that Key Bank's admitted extra-judicial seizure and sale prevents it from collecting a deficiency judgment. Based upon this reasoning, plaintiff also argues that it is entitled to affirmative and declaratory relief on its claims against Key Bank and Gilman for conversion. Dietrich denies that she as-

sented to Key Bank's repossession of the vessel.

Dietrich further contends that even assuming *arguendo* that federal law does not prohibit the parties to a recorded ship's mortgage from agreeing to state-law foreclosure, the record does not evidence such an unambiguous agreement. For instance, the promissory note Dietrich executed upon the vessel's purchase in April, 1982 provides that "[t]his note was executed and delivered in the State of Florida and such law shall apply in the construction thereof until a First Preferred Ship Mortgage has been effectively recorded, whereupon the procedural and substantive law of the United States shall apply." The ship's mortgage was recorded on November 10, 1983.

### The Act

The fundamental issue raised by Key Bank's defense to summary judgment is whether federal law permits the parties to a recorded ship's mortgage to agree contractually that the mortgagee may use state-law self-help to repossess the vessel and conduct a private foreclosure sale. The Ship Mortgage Act is part of the Merchant Marine Act of 1920, and its legislative history demonstrates that the Act was designed to make the mortgagee more secure than under then-existing admiralty law, which had rendered a ship mortgage "practically worthless." *The Thomas Barlum*, 293 U.S. 21, 39, 55 S.Ct. 31, 36, 79 L.Ed. 176 (1934).

Section 951 of the Act grants the United States District Courts original and exclusive jurisdiction over suits *in rem* in admiralty upon the default of a preferred ship mortgage. Section 954 provides jurisdiction for an *in personam* deficiency judgment against the mortgagor, should the value of the vessel fall short of the mortgage. Complementing these sections is 28 U.S.C. sec. 2004, which states that any personalty sold under order of court must be sold in accordance with section 2001.

No reported circuit court decision has expressly held that the above scheme for judicial foreclosure nonetheless permits a contractual agreement between the parties

for the private, extra-judicial foreclosure of a ship mortgage. But in the context of addressing a related matter, the court in *Challenger, Inc. v. Durno*, 227 F.2d 918 (5th Cir.1956), did find that such an option was available to a mortgagee. In *Challenger*, the mortgagee brought an *in rem* proceeding under the Act, seeking judicial foreclosure of the mortgage and reimbursement for certain expenses incurred in maintaining the vessel.

The mortgagee in *Challenger* took possession of the vessel pursuant to a clause in the mortgage allowing repossession, but "he never attempted to consummate foreclosure by this route." *Id.* at 919 n. 1. Consequently, the *Challenger* decision differs factually from this case because the validity of a private foreclosure sale was not before the court. Nonetheless, the court held that the mortgagee's repossession pursuant to the mortgage clause was valid, and further stated that the mortgagee had the option to foreclose privately the vessel.

In *Challenger*, the vessel was "virtually abandoned in the port of Belize, British Honduras" when the mortgagee took possession. *Id.* at 919. The mortgagee was in possession of the vessel for 16 months before he brought the vessel to the United States and commenced foreclosure under the Act. Judge Brown concluded that the mortgagor was entitled to a credit for the value of the vessel's usage for 14 of the 16 months while the mortgagee was in possession. This was in accord with the principle that a mortgagee in possession must compensate the owner for the use of the vessel. The court found that only two months possession by the mortgagee was reasonable under the circumstances.

In setting forth the law relevant to the issues before the court, Judge Brown directly touched upon the issues central to this case. He stated:

> When one claims possession in that capacity for an extensive period of time and does not avail himself of the existing contractual right to a private foreclosure, he cannot continue to hold the vessel indefinitely awaiting the day of an admiralty foreclosure with its obvious advantages without compensation. The Mortgagee must determine what he is going to do: a private foreclosure after which the vessel owner's rights cease or an Admiralty Preferred Ship Mortgage foreclosure in which, until seizure ... the owner is entitled to the compensation due an owner.

*Id.* at 922.

The *Challenger* court was not presented with a challenge to an extra-judicial foreclosure because the mortgagee chose instead to bring an *in rem* action in federal court. But the court clearly stated that such an option was available. Section 951, after all, provides that upon default, a preferred mortgage *"may* be enforced by the mortgagee by suit in rem in admiralty." (emphasis added). Florida law authorizes a secured party to take possession of the collateral upon default, and upon notice to the mortgagee, to sell it at any public or private sale. Fla.Stat. sec. 679.503–504.

Plaintiff argues, however, that the logic and force of the *Challenger* decision were undercut by the subsequent decision in *J. Ray McDermott & Co., Inc. v. Vessel Morning Star*, 457 F.2d 815, 818 (5th Cir. 1972) (en banc). In *McDermott*, the court analyzed the Act and the judicial foreclosure scheme, finding it was designed to insure that "the ready availability of credit to support interstate commerce should not be impeded by parochial limitations and that the Act would wholly and completely supersede state law and practice in every respect." *Id.* at 818.

In the *McDermott* case, Louisiana law provided that in order for a mortgagee to be entitled to a deficiency judgment, a vessel sold at public sale had to be appraised. Because the vessel in *McDermott* had been sold at public auction without an appraisal, however, the original Court of Appeals panel vacated the deficiency judgment in reliance upon state law. But the *en banc* Court rejected this reasoning, and held that state law "may not limit or restrict the application of the Ship Mortgage Act." *Id.* at 819.

The *McDermott* court found the established federal procedures for the foreclosure and sale of a vessel to provide a complete and comprehensive scheme for judicial foreclosure. This established scheme was critical in *McDermott*, because pursuant to section 2001, an appraisal is required only if the property is sold at a private sale. As the vessel in *McDermott* was in fact sold at a public sale, no appraisal was necessary under federal law. The *en banc* court found that application of the Louisiana appraisal requirement would introduce an undesirable lack of uniformity in the application of the Act. Indeed, the court instructed that "[i]n accordance with the national scope of the Ship Mortgage Act it must be construed, if possible, to maintain the desired uniformity necessary to effectuate its purposes." *Id.* at 818.

The *McDermott* case, however, does not speak directly to the matters before the court, because it did not involve a purported contractual agreement between the parties for state law remedies. In other words, while the *McDermott* court clearly held that state law cannot of its own accord vary the requirements established by section 2001, the court had no cause to analyze the parties' contractual ability to incorporate state law remedies, such as self-help repossession and foreclosure.

The Court concludes that *McDermott* decision in no way retracted from the analysis in the earlier *Challenger* decision. Indeed, Judge Brown joined the majority in *McDermott*, and even elaborated upon that principle in *Nat. G. Harrison Over. Corp. v. American Barge Sun Coaster*, 475 F.2d 504 (5th Cir.1973). In *Harrison*, the court refused to apply Georgia law, under which the interest on the promissory notes underlying the ship mortgage was usurious. In that sense, *Harrison* actually expresses a strong preference for enforcing the contractual expectations of the parties.

### Application to Claims

The above analysis now presents the Court with the need to address the ultimate issues: First, is Dietrich entitled to summary judgment on her conversion claims

against Key Bank and Gilman. Second, should the Court strike Key Bank's claim for a deficiency judgment against Dietrich. The first question arises by way of Dietrich's July 28, 1987 motion for partial summary judgment against Key Bank, and its July 5, 1988 motion for partial summary judgment against defendant Gilman. Both motions seek a declaration that Key Bank converted the vessel. This pertains solely to Count II of the amended complaint.

■ As the thesis of Dietrich's conversion claim in Count II is that Key Bank was limited to a judicial foreclosure sale, the correct disposition of that claim should be clear from the Court's discussion of the Act. Key Bank was entitled to elect to forego the option of a judicial proceeding for the attachment and sale of its collateral. Consequently, no conversion took place, as a private sale was permissible.

The security agreement and the ship mortgage both expressly alerted plaintiff to the fact that the mortgagee sought to preserve its ability to use self-help under state law. While the promissory note did state that federal law and procedures would govern once the ship mortgage was executed, the mortgage itself again referred to the mortgagee's option to repossess the vessel and subsequently to sell it.

In addition to Key Bank's express reservation of its ability to use state law, Florida law permits a secured party to repossess peacefully collateral upon default, and subsequently to sell the collateral at a public or private sale. Fla.Stat. sec. 679.9–503–504. Thus Florida law itself—independent of the parties' contractual understanding—provides a supplemental rationale for Key Bank's actions. Consequently, any possible ambiguity as to Key Bank's contractual right to foreclose in the manner it did is insignificant. Thereupon, Dietrich's motions for partial summary judgment against Key Bank and Gilman for conversion, be, and the same are, hereby DENIED.

While Dietrich is not entitled to summary judgment on conversion, it does not necessarily follow that her breach of contract claims in Count I must also fail. Dietrich

has not moved for summary judgment on these claims, so they are not before the Court. In Count I, Dietrich alleges that she received improper notice of the sale, that the sale was improperly conducted, and conducted in a commercially unreasonable manner.

■ As to the deficiency judgment, the parties have focused exclusively upon Key Bank's failure to follow section 2001's private sale procedures. In particular, Dietrich has not argued that the deficiency claim is invalid due to Key Bank's alleged failure to provide adequate notice. While the complaint does allege such a defect, Dietrich has not proffered it as a basis justifying summary judgment striking the deficiency claim.

As the sole basis for striking the deficiency claim is that Key Bank was exclusively limited to a judicial foreclosure and sale, Dietrich must also fail in this motion for summary judgment. The unmistakable import of the *McDermott* and *Harrison* decisions is that the Act provides the exclusive *judicial* mechanism for foreclosure of a ship mortgage and any remaining deficiency judgment. But in this case Key Bank chose to rely upon a private, extra-judicial foreclosure.

Plaintiff cites the case of *Bank of America Nat. Trust and Sav. Ass'n v. Fogle*, 637 F.Supp. 305, 307 (N.D.Cal.1985), which did address the "dispositive question [of] how this failure affects the mortgagee's right to recover a deficiency judgment." But the *Fogle* court found that section 2001 only permits judicially-approved private sales—a conclusion rejected in *Challenger* and by this Court. The *Fogle* decision, therefore, is of little assistance to plaintiff. Thereupon, Dietrich's motion for partial summary judgment striking Key Bank's claim for deficiency, be and the same is, hereby DENIED.

While Dietrich is not entitled to summary judgment striking the deficiency claim, the Court is not presented with the question of whether she has any other defenses on the merits to a deficiency judgment. In Florida the failure of a secured party to give proper notice of a sale precludes an action for deficiency. *See Peoples Bank of Polk County v. Roberts*, 779 F.2d 1544 (11th Cir.1986); *Commercial Credit Corp. v. Lane*, 466 F.Supp. 1326 (D.C.Fla.1979); *Barnett Bank of Tallahassee v. Campbell*, 402 So.2d 12 (Fla.App.1981). The issue of proper notice is not before the Court on these motions.

### Cracker Boy's motion to dismiss

Defendant Cracker Boy moved to dismiss on June 16, 1988, on the basis that plaintiff's amended complaint failed to allege that the bailee did not exercise a degree of care toward the goods that a reasonably prudent person would bestow on his own goods. On July 22, 1988, plaintiff filed a second amended complaint as to Cracker Boy, containing the allegations which defendant stated were necessary. Thereupon, defendant Cracker Boy's motion to dismiss be, and the same is, hereby DENIED, and it SHALL answer the complaint within 10 days from the date of this Order.

### Shearer's motion to quash

■ Defendant Shearer moved to quash service of process on July 13, 1988. This followed Shearer's June 16, 1988 motion to dismiss on the grounds that plaintiff had failed to effect timely service of process. On March 2, 1988 the Court noted that plaintiff had failed to comply with its previous order of November 6, 1987, which had required plaintiff to serve the additional defendant's forthwith.

On May 9, 1988 the Court again revisited plaintiff's failure to serve Shearer properly. Plaintiff had wrongly assumed that mail service was properly effected although Shearer did not return an acknowledgement. The Court vacated a default against Shearer, and required plaintiff to serve him personally by May 29, 1988. Over two weeks past this deadline, Shearer moved for a final judgment of dismissal based upon plaintiff's failure to effect service pursuant to the Court's May 9, 1988 Order.

Plaintiff's opposition to Shearer's motion for dismissal noted that on May 18, 1988

she had summons issued and mailed them to the Sheriff's Office in Burlington, Vermont. By affidavit, it is clear that plaintiff sought in good faith to comply with the Court's Order. Furthermore, the record fails to evidence any prejudice to Shearer in the short delay in service. Thereupon, Shearer's motions to dismiss and quash service, be and the same are, hereby DENIED.