[No. 55728–4.   En Banc.   April 12, 1990.]

NATE LEASING CO., INC., *Appellant,* v. GARY K. WIGGINS, ET AL, *Respondents.*

*Jeffrey L. Jernegan* and *Julie Marshall Johnson* (of *Mikkelborg, Broz, Wells & Fryer*), for appellant.

*Terence P. Lukens* and *Paul R. McDonald* (of *Karr Tuttle Campbell*), for respondents.

DURHAM, J.—The present case tests the exclusivity of the Ship Mortgage Act, 1920, 46 U.S.C §§ 911–984, which grants preferred status to ship mortgages perfected under the act. The trial court dismissed plaintiff's action on summary judgment and declared a deficiency unavailable. It ruled that the Ship Mortgage Act is not exclusive, and that federal law, rather than state law, governs the nonjudicial foreclosure of a preferred ship's mortgage. We hold that the Ship Mortgage Act is the exclusive remedy for foreclosure of a preferred ship mortgage, and that federal common law governs the recovery of a deficiency in this action. Therefore, while we differ with the trial court's reasoning, we affirm the dismissal of plaintiff's action.

Defendant Gary Wiggins was a stockholder and president of Sea Horse Seafood Corporation (Sea Horse). Stanley Thurman was a stockholder and vice–president of Sea Horse. Thurman is also the sole officer and director of Nate Leasing Co., Inc. (Nate), the plaintiff in this action.

In November 1984, Sea Horse, Wiggins and Thurman signed, as co–makers, a note to Seattle–First National Bank (Sea–First). The note was renewed, and additional credit

granted, under a new note signed by the same three parties in October 1985. In March 1985, Sea Horse executed a preferred ship mortgage to Sea–First on the *Santa Anita*. The mortgage was recorded on March 13, 1985.

In October 1986, Sea–First made a demand for payment to all makers. No payment was received and the notes and mortgage were in default. In December 1986, Nate purchased the notes and the mortgage. On December 22, 1986, Nate sent a letter to Sea Horse, Wiggins, and Thurman informing the parties of Nate's status as assignee of the notes and the mortgage and stating that Nate intended to commence foreclosure proceedings on the *Santa Anita* if no payment or arrangement was made by December 24. The letter went on to say that Nate intended to sell the boat and look to the maker and guarantors of the note for payment of any deficiency.

The language of the mortgage provided that if the mortgage was in default, Nate, as assignee, was "authorized to take possession of [the ship] . . . and to sell . . . after first giving a notice of five (5) days, to be given by publication in some newspaper published in Seattle, Washington . . .".

No payments were made. Nate took possession of the *Santa Anita* and, after publishing a 1–day notice of the sale in the Seattle Times and the Seattle Post–Intelligencer, sold the vessel to the only bidder for a net price of $390,000. Nate did not have the ship appraised prior to the sale.

The bid Nate received and accepted was for $450,000, less costs of repairs up to $60,000. Necessary repairs totaled more than $60,000. From the net proceeds, Nate also paid off various maritime liens on the ship totaling approximately $120,000. Thurman entered into an agreement with Nate to pay his pro rata share of the deficiency and balance on the notes.

On February 26, 1987, Nate brought a deficiency action under RCW 62A.9–504(2) against Sea Horse and Wiggins for moneys due on the notes and mortgage. Some time after

the action was commenced, Sea Horse went into receivership and Nate is now looking to Wiggins for the balance of the deficiency.

On September 12, 1988, defendant Wiggins moved for summary judgment, asserting that plaintiff's failure to comply with the provisions of the Ship Mortgage Act in selling the *Santa Anita* barred the recovery of any deficiency. Nate filed a cross motion for summary judgment, asserting that Washington's Uniform Commercial Code was the applicable law and that Nate was entitled to a deficiency as a matter of law. On October 3, 1988, the trial court granted Wiggins' motion, denied Nate's cross motion, and dismissed the complaint.

The trial court ruled that the Ship Mortgage Act does not provide the exclusive remedy for foreclosure of a preferred ship mortgage. However, because article 9 of Washington's Uniform Commercial Code does not apply "where federal law governs the rights of the parties", the court ruled that the procedures in 28 U.S.C. § 2001 of the judicial sales act must be followed in such a foreclosure. Because "it is undisputed that [those provisions] were not complied with in this case" and "those provisions are more stringent than the terms of Article 9 itself", the court ruled that the sale was not commercially reasonable and that "no deficiency judgment is available."

Nate moved for reconsideration of the oral ruling; the motion was denied on October 25, 1988. We granted Nate's motion for direct review.

### EXCLUSIVITY OF THE SHIP MORTGAGE ACT

There are two issues this court must address: the exclusivity of the Ship Mortgage Act and the effect of a failure to comply with applicable foreclosure procedures on the recovery of a deficiency. We first address the exclusivity of the act, beginning with a brief history.

Prior to the enactment of the Ship Mortgage Act, 1920, a ship mortgage could not be foreclosed in admiralty. *J. Ray McDermott & Co. v. Vessel Morning Star,* 457 F.2d 815,

817 (5th Cir.), *cert. denied,* 409 U.S. 948 (1972). As a result, mortgage securities on ships were practically worthless at a time when the country was trying to build up a strong merchant marine. *Detroit Trust Co. v. The Thomas Barlum,* 293 U.S. 21, 39, 79 L. Ed. 176, 55 S. Ct. 31 (1934). The act was passed to promote the merchant marine and to encourage financing essential to the development of the fledgling shipping industry. *McDermott,* at 817. A mortgagor who perfects a marine mortgage under the act is granted preferred status over other lienholders. 46 U.S.C. § 922.

The act also brought foreclosure of such mortgages within the admiralty jurisdiction of the federal courts. 46 U.S.C. § 951. Congress recognized the impact of shipping on interstate and international commerce. In Senate hearings, the "need for exclusive jurisdiction of the admiralty court and uniformity of procedure in ship mortgage foreclosure proceedings was stressed". *McDermott,* at 817. Uniform procedures were also important because the United States was the principal source of credit for such mortgages. *Seattle–First Nat'l Bank v. Bluewater Partnership,* 772 F.2d 565 (9th Cir. 1985).

The intention of the drafters was to "[provide] for a speedy and uniform practice of foreclosure in the Federal Courts instead of leaving the mortgagees to the varying procedures of the courts of the several states." *McDermott,* at 818 (quoting *Hearings Relative to the Establishment of an American Merchant Marine Before the Senate Committee on Commerce,* 66th Cong., 2d Sess. 933 (1919)). The *McDermott* court went on to say that

> [i]t is clear that Congress intended that the ready availability of credit to support interstate commerce should not be impeded by parochial limitations and that the Act would wholly and completely supersede state law and practice in every respect.

*McDermott,* at 818.

The Ship Mortgage Act, 1920, codified at 46 U.S.C. §§ 911–984, applies to all vessels registered or licensed under

the laws of the United States, with certain exceptions not relevant here. 46 U.S.C. §§ 911, 922(a). No such vessel may be sold or mortgaged unless the proper documents are recorded with the customs office. 46 U.S.C. §§ 921. Any mortgage that is perfected in compliance with the act has a "preferred status" over other security interests in a vessel. 46 U.S.C. § 922.

The act provides that upon default the mortgagee may bring a suit in rem in admiralty to enforce the lien, and that the district courts of the United States have exclusive jurisdiction over all in rem actions under the act. 46 U.S.C. § 951. The mortgagee may also bring suit in personam in admiralty against the mortgagor for the "amount of the outstanding mortgage indebtedness secured by such vessel or any deficiency in the full payment thereof." 46 U.S.C. § 954. State and federal courts have concurrent jurisdiction over in personam actions under § 954. *Reedsburg Bank v. Apollo,* 508 F.2d 995, 999 (7th Cir. 1975). The Supreme Court has said that

> the jurisdiction granted to the admiralty by the Ship Mortgage Act is exclusive. If a mortgage is within the Act, there can be no suit to foreclose it in a state court; if the mortgage is not within the Act, there can be no suit for foreclosure in the admiralty.

(Footnote omitted.) *Thomas Barlum,* 293 U.S. at 42.

Thus, a secured party with a mortgage perfected under the Ship Mortgage Act can bring a foreclosure action only in federal court. The sale of a vessel in such a foreclosure, whether public or private, must comply with the provisions of 28 U.S.C. §§ 2001 and 2004 of the judicial sales act. *Dietrich v. Key Bank, N.A.,* 693 F. Supp. 1112, 1113 (S.D. Fla. 1988); *McDermott,* at 818. Section 2001 describes procedures for sale of realty and section 2004 makes those procedures applicable to sales of personalty. The mortgagee can then bring a deficiency action in either state or federal court. *Reedsburg Bank,* at 999; *McDermott,* at 818.

In 1972, the Fifth Circuit addressed the question of whether state or federal law governs deficiency judgments

under the Ship Mortgage Act.[1] *J. Ray McDermott & Co. v. Vessel Morning Star, supra.* The court found that while state law may be looked to occasionally to "fill the gaps in an incomplete and less than perfect maritime system", the "Ship Mortgage Act, when read together with [§ 2001 of the judicial sales act] forms a comprehensive procedure for the foreclosure of a preferred ship's mortgage, the sale of the vessel and any resulting deficiency adjudged against the debtor *in personam.*" *McDermott,* at 818. The court held that "[state law] may not limit or restrict the application of the Ship Mortgage Act or affect the uniform application of that Act so as to defeat [congressional intent]." *McDermott,* at 819.

While the court in *McDermott* found that the Ship Mortgage Act left no room for operation of state law, the *Morning Star* had been sold at a judicially confirmed public sale. Thus, the court was not called on to address the availability of a nonjudicial repossession and sale. In the present case, instead of pursuing the federal remedies available, Nate relied on the state Uniform Commercial Code both to conduct a nonjudicial foreclosure sale and to obtain a deficiency judgment.

The utilization of state law self–help procedures to take possession of and sell a ship covered by a preferred ship mortgage appears to be a relatively new phenomenon. In 1983, Judge Beeks of the United States District Court for the Western District of Washington stated that "the court has not found, nor has it been directed to, a reported case wherein a preferred ship mortgage was foreclosed privately; in all cases of which the court has knowledge, the mortgagee has always chosen to utilize admiralty procedure." *Price v. Seattle–First Nat'l Bank,* 582 F. Supp. 1568, 1569 (W.D. Wash. 1983). Since *Price,* there have been only three cases involving private foreclosure reported: *Brown v. Baker,* 688 P.2d 943 (Alaska 1984); *Bank of Am. Nat'l*

---

[1]The court sat en banc because the issue was "a matter of such vital public concern". *McDermott,* at 816.

*Trust & Sav. Ass'n v. Fogle,* 637 F. Supp. 305 (N.D. Cal. 1985); and *Dietrich v. Key Bank, N.A., supra.* These four cases, which form the basis of the arguments here, conflict both as to reasoning and result.

In *Price,* the mortgagee bank relied on language in the mortgage contract to repossess the mortgaged ship without judicial intervention and sell the vessel at public auction. Price, the mortgagor, sued for wrongful taking and the bank cross–claimed for a deficiency judgment. *Price,* at 1569. Price moved for a summary judgment declaring a deficiency judgment unavailable because the bank failed to comply with the exclusive foreclosure procedures of the Ship Mortgage Act. *Price,* at 1569.

The court found that allowing private foreclosures would be "in derogation of the distinct public interest in a uniform practice dealing with judicial foreclosure of security interests in vessels", but nevertheless held that it was "without authority, however, to declare invalid an *in personam* remedy similar to that provided by RCW 62A.9–504" and that the "validity of 'self help' provisions and the availability of a deficiency judgment after private foreclosure are both issues for the state to resolve." *Price,* at 1570. The court did not explain why it was "without authority" to declare state law remedies invalid, the court simply denied Price's motion to bar a deficiency without further explanation.

One year after *Price,* the Alaska Supreme Court echoed *McDermott,* stating that the Ship Mortgage Act and judicial sales act, when read together, form a "comprehensive procedure for the foreclosure of a preferred ship's mortgage, the sale of the vessel and any resulting deficiency". *Brown v. Baker, supra* at 949. However, the court found that, because the vessel was voluntarily returned to the mortgagee after default, there was "*no foreclosure action* and therefore the Ship Mortgage Act [was] inapplicable." *Brown,* at 949. The court then went on to apply state law to determine if the mortgagor was entitled to the surplus the mortgagee realized on the sale of the vessel. The Alaska

court seems to be saying that parties who avail themselves of the protection of a preferred ship mortgage may nonetheless render the statute inapplicable simply by choosing not to follow the procedures set forth in the statute.

In 1985, another District Court addressed the issue of private foreclosure sales and found that there is "'simply no room for the operation of state law' on the issue of whether extrajudicial private sales are permissible." *Bank of Am. Nat'l Trust & Sav. Ass'n v. Fogle, supra* at 307 (quoting *Nat G. Harrison Overseas Corp. v. American Barge Sun Coaster,* 475 F.2d 504, 506 (5th Cir. 1973)). In *Fogle,* the secured vessel was surrendered after default and sold at a private sale. The bank contended that federal law was silent on the availability of private sales and sought a deficiency based on compliance with state law procedures governing private sales. *Fogle,* at 306–07. The court disagreed stating that the "Ship Mortgage Act most assuredly is not silent on the availability of such private sale procedures." *Fogle,* at 307.

> This contention [that section 2001(b) says nothing about non-judicial private sales] is plainly without merit. It is more than slightly disingenuous to say that when a statute specifically authorizes a specific, detailed procedure for something, that statute is to be deemed "silent" on the question of whether some entirely different procedure can be substituted for it. Section 2001(b) authorizes private sales so long as certain requirements are met. One of those requirements is court approval. By specifically and explicitly requiring judicial approval for private sales, Congress obviously meant to disapprove of extrajudicial private sales. There is, therefore, "simply no room for the operation of state law" on the issue of whether extrajudicial private sales are permissible. *Harrison Overseas Corp. v. American Barge Sun Coaster,* 475 F.2d 504, 506 (5th Cir.1973). The Bank's purported "reservation" of the right to apply state law contrary to federal law is, of course, completely without effect. The validity of the Bank's private foreclosure sale will be determined under § 2001(b) alone.

*Fogle,* at 307.

The most recent case to address the issue of private foreclosure of a preferred marine mortgage is *Dietrich v. Key*

*Bank, N.A.,* 693 F. Supp. 1112 (S.D. Fla. 1988). After Dietrich defaulted, the bank seized the vessel from storage and sold it at a private sale. *Dietrich,* at 1113. The bank relied on a separate security agreement between the parties giving the bank "all rights of a secured party under the Florida Uniform Commercial Code . . .". *Dietrich,* at 1113. Dietrich brought a claim against the bank for conversion and sought to bar a deficiency judgment based on the bank's failure to follow the exclusive procedures of the Ship Mortgage Act. *Dietrich,* at 1113–14.

After discussing the relationship between the Ship Mortgage Act and § 2001, the court stated that "[n]o reported circuit court decision has expressly held that the above scheme for judicial foreclosure nonetheless permits a contractual agreement between the parties for the private,. extra–judicial foreclosure of a ship mortgage." *Dietrich,* at 1114–15. The court then addressed, and tried to reconcile, two related cases: *Challenger, Inc. v. Durno,* 227 F.2d 918 (5th Cir. 1955), *reh'g denied* (Jan. 10, 1956); and *J. Ray McDermott & Co. v. Vessel Morning Star,* 457 F.2d 815 (5th Cir.), *cert. denied,* 409 U.S. 948 (1972), previously discussed.

In *Challenger,* the mortgagee took possession of the secured vessel which had been virtually abandoned in British Honduras. He then took 16 months to bring the vessel to the United States and bring an in rem foreclosure action. The court stated that a party who "does not avail himself of the existing contractual right to a private foreclosure . . . cannot continue to hold the vessel indefinitely awaiting . . . an admiralty foreclosure . . .". *Challenger,* at 922. While acknowledging that the *Challenger* court was not presented with an extrajudicial sale, *Dietrich* found that the "court clearly stated that such an option was available." *Dietrich,* at 1115.

The court then addressed the *McDermott* case, stating that "while the *McDermott* court clearly held that state law

cannot of its own accord vary the requirements [of] section 2001", because there was no contractual agreement between the parties, the court had no reason to analyze the parties' ability to contractually incorporate state remedies. *Dietrich,* at 1116. The *Dietrich* court uses this same reasoning to conclude that *McDermott* in no way undercuts the earlier decision in *Challenger. Dietrich,* at 1116.

Stating that the "import of the *McDermott* [decision] is that the Act provides the exclusive *judicial* mechanism for foreclosure of a ship mortgage", the court concluded by expressly rejecting *Fogle's* conclusion that § 2001 permits only judicially approved private sales. *Dietrich,* at 1117.

In sum, the cases dealing with private foreclosure of a preferred ship mortgage have varied both as to reasoning and result. However, as noted earlier, *McDermott* is the only circuit court opinion which has directly addressed the relationship between the Ship Mortgage Act and state law. That court held that the Ship Mortgage Act, in conjunction with the judicial sales act, forms a "comprehensive procedure", and state law could not be used to override congressional intent. *McDermott,* at 819. Our holding in this case rests squarely on the foundation laid by *McDermott.*

Both Nate and the court in *Dietrich* try to distinguish *McDermott* as not having directly addressed the issue of the validity of a nonjudicial sale. However, nonjudicial sales of vessels have only begun to reach the courts in the last 6 years, and the fact that *McDermott* did not address that issue should not diminish the strongly worded, clear holding in that case.[2]

---

[2]Nate argues that the language of the Ship Mortgage Act itself allows a mortgagee to go outside the act to conduct a nonjudicial sale. Section 951 states that after default, the lien "may be enforced . . . by a suit in rem." Nate argues that the use of the word "may" means the mortgagee need not proceed under the act, but may simply choose to seek a remedy outside the act. The court in *Dietrich* appears to have reached the same conclusion. *Dietrich,* at 1115. However, when § 951 is read in connection with § 954, under which a mortgagee "may, in addition to all other remedies granted by this chapter" bring suit in admiralty in personam, an argument could be made that the mortgagor does have an option—to choose among the remedies in the act, not to disregard the act entirely.

■ As to the cases dealing with private foreclosures, we look primarily to *Dietrich* and *Fogle*. Those two cases are in direct opposition: *Dietrich* would allow the parties to look to state law; *Fogle* held that the Ship Mortgage Act is exclusive. Neither case is controlling, but given the history and purpose of the act, *Fogle* appears to be the better reasoned of the two. Also, the analysis in *Fogle* rests squarely on *McDermott*'s clear statement that there is no room for state law in such foreclosures. Accordingly, we adopt the reasoning in *Fogle* and hold that the Ship Mortgage Act provides the exclusive remedy for foreclosure of a preferred ship mortgage.

We find support for our conclusion in recent legislative action. On November 23, 1988, portions of the Ship Mortgage Act were amended. Act of Nov. 23, 1988, Pub. L. No. 100–710, 1988 U.S. Code Cong. & Ad. News (102 Stat.) 4735. While the amendments do not control this action, the relevant changes do appear to support the argument that Congress intended the mortgagee's options to be limited to those within the act.

Under the amendments, the language of §§ 951 and 954 have been combined into one section and a third option has been added. The relevant portions now state that a mortgagee may enforce the lien in (1) a civil action in rem, (2) a civil action in personam in admiralty for the debt or deficiency, and (3) a civil action against the mortgagor. Act of Nov. 23, 1988, Pub. L. No. 100–710, 1988 U.S. Code Cong. & Ad. News (102 Stat.) 4745 (to be codified at 46 U.S.C. § 31325(b)(1)–(3)). Prior to the amendments, in rem and in personam actions could only be brought when the vessel was in the United States. H.R. Rep. 100–918, 100th Cong., 2d Sess. 21, *reprinted in* 1988 U.S. Code Cong. & Ad. News 6114. The new provision was added to make it easier to enforce the mortgage and remove the incentive for owners to move a vessel overseas to avoid United States jurisdiction. It would appear that the committee intended for a mortgagee to proceed under the act even when the vessel

was beyond the court's jurisdiction and not to have state law applied by default.

Because we hold that the Ship Mortgage Act, in conjunction with the judicial sales act, provides the exclusive remedy for foreclosure of a preferred ship mortgage, there is no need to decide if Nate complied with the terms of the mortgage in repossessing and selling the *Santa Anita*.[3]

### AVAILABILITY OF DEFICIENCY

We next consider the effect a failure to comply with the procedures set out in the judicial sales act has on the mortgagee's right to a deficiency.

Section 2001 of the judicial sales act governs the sale of realty. Section 2004 makes the procedures of section 2001 applicable to personalty. Under § 2001, a sale may be public, with the court directing the terms and conditions of the sale (28 U.S.C. § 2001(a)), or private, with the court confirming the sale after the fact. 28 U.S.C. § 2001(b). Before a private sale will be confirmed, there must be three appraisals of the property, the sale price may not be less than two–thirds the appraised price, and the terms of the sale must be published in a general circulation newspaper for at least 10 days before the sale is confirmed. It is agreed that Nate did not comply with the procedures of § 2001.[4]

---

[3]Nate also argued that because the mortgage of the *Santa Anita,* which allowed for repossession and private foreclosure, was on a standard Coast Guard form, that necessarily leads to the conclusion that the government contemplates nonjudicial foreclosures of preferred ship mortgages. This argument is without merit. Not all ship mortgages are preferred ship mortgages. The Ship Mortgage Act excludes some vessels based on tonnage or intended use. 46 U.S.C. § 922(a). More importantly, it appears that the word "PREFERRED" was typed in above the words "Mortgage of Vessel", which leads to the conclusion that the form in question was not used by the Coast Guard on preferred marine mortgages.

[4]The trial court found that Nate did not comply with the provisions of § 2001(b) which govern a private sale. In the present action, Nate sought to make a distinction between "private" sales, meaning "nonjudicial", and "private" sales, meaning not advertised to the general public. As a result, Nate argues, the trial court was wrong to apply § 2001(b). This issue was not raised at the trial level. Regardless, since Nate did not comply with either § 2001(a) or (b), the result is unchanged.

■ In determining the effect of Nate's failure to comply with the procedures of § 2001, we again look to *Bank of Am. Nat'l Trust & Sav. Ass'n v. Fogle,* 637 F. Supp. 305, 307 (N.D. Cal. 1985) for guidance. In ruling that a deficiency judgment was unavailable, *Fogle* stated as follows:

> The legal effect of the mortgagee's failure to comply with § 2001(b) will, of course, be determined by federal law. *Walter E. Heller & Co. v. O/S Sonny V.,* 595 F.2d 968, 971 (5th Cir.1979). Section 2001(b) does not, however, specify what follows from a failure to comply with its requirements; thus, federal *common law* must determine the effect of the failure on the mortgagee's right to a deficiency judgment. And, because the Court is unaware of any cases that state how a failure to comply with the requirements of § 2001(b) affects a mortgagee's right to recover a deficiency judgment under 46 U.S.C. § 954, the Court is faced with the task of developing the federal common law in this area.

*Fogle,* at 307. The *Fogle* court then looked to California law for guidance, stating that "state law can and should be applied interstitially" to resolve the issue. *Fogle,* at 307. Looking to state law is appropriate in this instance because:

> There is no Federal law of mortgages except as is contained in specific statutes such as the Ship's Mortgage Act. Where voids appear, it is necessary for the Court to look to other sources for its answers. While the Federal Court may not be bound by State law in such an instance, nevertheless, the State law is the logical place to look for guidance.

*Fogle,* at 308 (quoting *Southland Fin. Corp. v. Oil Screw Mary Evelyn,* 248 F. Supp. 520, 522 (E.D. La. 1965)). Under California law a mortgagee who fails to comply with applicable procedures in repossessing and selling the collateral securing the mortgage is barred from recovering a deficiency. The *Fogle* court adopted this rule.

In the present case, it is agreed that Nate did not comply with § 2001. Thus, under federal common law, as set forth in *Fogle,* Nate is barred from recovering a deficiency and the trial court's dismissal of his action is affirmed.

Finally, Wiggins has requested an award of attorney fees in his brief as required by RAP 18.1(b). However, an award of fees is not appropriate in this case because he failed to timely submit an affidavit of expenses, RAP 18.1(c), and he

failed to request fees at oral argument. RAP 18.1(d). Nate did not request an award of attorney fees in his brief.

In summary, we hold that the Ship Mortgage Act, in conjunction with §§ 2001 and 2004 of the judicial sales act, provides the exclusive remedy for foreclosure of a preferred ship mortgage and that federal common law, as set forth in *Bank of Am. Nat'l Trust & Sav. Ass'n v. Fogle*, 637 F. Supp. 305 (N.D. Cal. 1985) governs the recovery of a deficiency when proper procedures are not followed. Accordingly, we affirm the dismissal of Nate's action.

CALLOW, C.J., UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, and SMITH, JJ., and PEARSON, J. Pro Tem., concur.