475 F.2d 504
 NAT G. HARRISON OVERSEAS CORP., Plaintiff,
v.
AMERICAN BARGE SUN COASTER, and her appurtenances, in rem,
Defendant, Thurston Crawford, Defendant-Appellant,
Litton Industries Credit Corporation,
Intervening Plaintiff-Appellee.
 No. 71-2663.
 United States Court of Appeals,
Fifth Circuit.
 March 8, 1973.
 
 William H. Maness, Jacksonville, Fla., for appellant.
 George E. Patterson, Jr., Miami, Fla., Sirius C. Cook, New York City, for appellee.
 Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.
 JOHN R. BROWN, Chief Judge:
 
 
 1
 Appellant Crawford, the borrower, challenges the imposition of a $300,000 plus personal judgment for the deficiency after the sale of the barge Sun Coaster. Crawford contends that (i) the District Court erred in finding that the mortgage in question was a "Preferred Ship Mortgage," (ii) that the judgment should be purged of interest, because it was usurious under the laws of the state of Georgia, (iii) that because the interest rate is usurious under the controlling state law no personal deficiency judgment can be entered under the federal law, and (iv) that the Court incorrectly computed the application of payments on the mortgage to principal and interest, thereby charging Appellant with a higher than proper deficiency.
 
 
 2
 Concluding that (i) under the intervening decision en banc in J. Ray McDermott & Co., Inc. v. M/V Morning Star, 5 Cir., 1972, 457 F.2d 815, 72 A.M.C. 907 (reversing the panel decision, 431 F.2d 714, 70 A.M.C. 2228) the law of the state of Georgia is irrelevant, (ii) the Preferred Mortgage Act[1] does not recognize usury when an agreement pledges a vessel as security and comes within the terms of the Act, but (iii) that the District Court's computation of the amounts allocable to interest and principal was incorrect, we affirm in part and modify in part.
 
 
 3
 The barge Sun Coaster was built in 1963 and financed by Plaintiff-Appellee Litton Industries. The financing was secured by the first preferred ship mortgage on the barge and by a preferred ship mortgage on another vessel, the "Scintilla". Appellant Crawford defaulted on the three promissory notes which formed the initial 1963 financing arrangement. In January of 1967 refinancing arrangements were made between Crawford and Litton Industries in order to avoid foreclosure. The new arrangement contemplated consolidation of the notes in default and the posting of additional security by the Appellant Crawford.
 
 
 4
 The original financing had stated the amount of the debt in a lump sum with both interest and principal (equaling the amount of debt) stated in a lump sum dollar figure, and providing that payments would be applied to interest and principal in a level amount. The 1967 refinancing note likewise stated interest and principal in lump sum dollar amounts which totaled the amount of the debt. It was, however, silent as to the manner in which payments were to be allocated between principal and interest.
 
 
 5
 The non-appealing Plaintiff Nat G. Harrison Overseas Corp., owned a cargo aboard the Sun Coaster when she was bound for Guantanamo Bay, Cuba from Miami, Florida on what would prove to be her last voyage. She capsized and was towed back to Florida bottom side up. Harrison Overseas libeled her and Litton Industries as the preferred ship mortgage holder intervened in the in rem proceedings[2] and by process in rem instituted a foreclosure of the mortgage.
 
 
 6
 Appellant Crawford contends that the mortgage fails to satisfy the criteria necessary for preferred status because it violates 46 U.S.C.A. Sec. 922(e) which provides:
 
 
 7
 "A mortgage which includes property other than a vessel shall not be held a preferred mortgage unless the mortgage provides for the separate discharge of such property by the payment of a specified portion of the mortgage indebtedness. If a preferred mortgage so provides for the separate discharge, the amount of the portion of such payment shall be indorsed upon the documents of the vessel."
 
 
 8
 The Appellees secured their loan with non-maritime property, as well as the preferred ship mortgage. However, the other items of collateral-which included real property, and hypothecated stock-were each treated in separate security instruments. In short, this "mortgage [-was not one which-] includes property other than a vessel * * *" Sec. 922(e).
 
 
 9
 The case at hand does not even approach the factual threshold where a Court would hold that Sec. 922(e) was breached. In the present case the ship mortgage covered a single piece of property, namely, the ship. The rational of the District Court in Emma Giles, D.Md., 1936, 15 F.Supp. 502, 36 A.M.C. 1146, depends on the fact that the mortgage instrument by its terms and within the corners of a single document, purported to create a mortgage lien on both maritime and non-maritime property. The Bay Belle, D.Md., 1963, 215 F.Supp. 72, 64 A.M.C. 2674, aff'd, 4 Cir., 1963, 324 F.2d 954. In the Emma Giles the different items securing the debt were not severable. In the case at hand the collateral is dealt with by separate instruments and there is no need for severance.[3] See, Pascagoula Dock Station v. Merchants and Marine Bank, 5 Cir., 1959, 271 F.2d 53, 55, 59 A.M.C. 2207.
 
 
 10
 Section 46 U.S.C.A. Sec. 954(a) permits the mortgagee to bring suit in personam against the mortgagor before the Admiralty for any deficiency that the sale price of the vessel bears to the indebtedness which it secures. 46 U.S.C.A. Sec. 926(d) specifies that:
 
 
 11
 "A preferred mortgage may bear such rate of interest as is agreed by the parties thereto."
 
 
 12
 Like the en banc court in J. Ray McDermott & Co., Inc. v. M/V Morning Star, 5 Cir., 1972, 457 F.2d 815, 72 A.M.C. 907, we perceive no void in the statutory scheme here. And since as Morning Star makes clear that the Ship Mortgage Act provides a comprehensive scheme for the foreclosure of preferred ship's mortgages and any remaining deficiency judgments against the debtor personally, there is no room for the operation of state law. Any adoption of state law would not only-as the court feared would occur in the Morning Star, supra-"introduce an undesirable lack of uniformity" in the Act, but in the present case it would flatly conflict with Section 926(d), supra. The remaining issue, whether the interest and principal payments were correctly computed, is only slightly more difficult.
 
 
 13
 Appellant asserts that by the structure of the underlying 1967 note[4] monthly payments were to be applied ratably to principal and interest, and therefore the method of allocation or computation of principal and interest used by the District Court was erroneous. This was especially true, he claims, since the 1963 agreements contemplated pro rata application of payments to principal and interest and therefore a "course of dealings"[5] has been established to which the Court must look to illuminate the intent of the parties to the note.
 
 
 14
 Appellee counters with a citation to the "United States Rule" as stated in Story v. Livingston, 1837, 38 U.S. (13 Peters) 359, 10 L.Ed. 200 where the Court said:
 
 
 15
 "The correct rule in general is that the creditor shall calculate interest whenever a payment is made. To this interest the payment is first to be applied and if it exceed the interest due, the balance is to be applied to diminish the principal. If the payment fall short of the interest, the balance of interest is not to be added to the principal so as to produce interest. This rule is equally applicable, whether the debt be one which expressly draws interest, or on which interest is given in the name of damages."[6]
 
 
 16
 Appellee also points to the fact that among the 1963 agreements were two smaller notes upon which the interest was stated in percentage and to which the "United States Rule" the Appellant Crawford concedes would apply.
 
 
 17
 The "United States Rule" has been with us almost since the founding of our federal system and it is an ideal source where Federal, not state, law is controlling, M/V Morning Star, supra. It has been applied to cases where interest is stated as a lump sum,[7] as here, as well as cases where interest is stated in a percentage.
 
 
 18
 But it is a rule to apply in the absence of a clearly expressed intention to handle allocation in some other way. Here four things were done in the note: (i) a lump sum of principal was precisely stated, (ii) a lump sum of total interest was precisely stated, (iii) these were to be paid in 72 installments all but the last of which were in equal specified amounts of $6,356.39, and (iv) such an installment computation reflects that necessarily the stated sums were aggregated. Each monthly payment was to be 1/71st of the stated principal and stated interest. It is the provision for equal monthly payments for the stated period, not the fact that total interest is stated in a lump sum, cf., United States v. McLemore, supra n. 7, which reflects a purpose to apply current payments ratably to interest and principal.
 
 
 19
 Consequently, the "United States Rule" does not control and the correct amount of principal and interest must be recomputed on remand in the light of this holding. But in all other respects we fully approve the District Court's action.
 
 
 20
 Affirmed in part: modified in part and remanded.
 
 
 
 [1]
 46 U.S.C.A. Sec. 922 et seq
 
 
 [2]
 The Hull insurance proceeds, of which mortgagee was the loss payee, from the capsizing were sufficient to pay the District Court's judgment in full. This litigation really concerns how much, if any, Appellant Crawford is to receive from the insurance fund
 
 
 [3]
 Cf. Gilmore and Black, The Law of Admiralty (1957) at 580-82
 
 
 [4]
 The Note recites the debt and interest to be paid as follows:
 "FOR VALUE RECEIVED, I promise to pay to the order of THE INGALLS SHIPBUILDING CORPORATION the amount of THREE HUNDRED THIRTY-SIX THOUSAND FIVE HUNDRED FOURTEEN and 93/100 DOLLARS ($336,514.93) with interest in the total amount of One Hundred Twenty-One Thousand One Hundred Forty-Five and 37/100 Dollars ($121,145.37), payable with each installment of principal, payable in seventy-one (71) equal monthly installments of Six Thousand Three Hundred Fifty-Six and 39/100 Dollars ($6,356.39) and one (1) final installment of Six Thousand Three Hundred Fifty-Six and 61/100 Dollars ($6,356.61), beginning on January 14, 1967, and on such date of each month thereafter until such sums are paid in full."
 
 
 [5]
 See, e. g., Uniform Commercial Code, Sec. 1-205 which makes a "course of dealing" part of the bargain in a sales contract. We do not mean to hold or even imply that the UCC would have any application to the case at hand, but only mention it by way of illustration
 
 
 [6]
 Whiteside v. Washington Loan & Trust Co., 1937, 68 App.D.C. 172, 95 F.2d 83, followed Story, supra
 
 
 [7]
 United States v. McLemore, 1846, 45 U.S. (4 Howard) 286, 11 L.Ed. 977