MARYLAND NATIONAL
BANK, Plaintiff,

v.

Joseph M. DAROVEC and Victoria A.
Loguidice Darovec, Defendants.

No. 92 C 2025.

United States District Court,
N.D. Illinois, E.D.

April 28, 1993.

Michael J. Greco, Howard D. Hollander, Hollander & Hollander, Chicago, IL, for plaintiff.

Glenn R. Gaffney, Glendale Heights, IL, for defendants.

## MEMORANDUM OPINION
## AND ORDER

ANDERSEN, District Judge.

This case is before the court on the parties' cross-motions for summary judgment. Defendants have also filed a motion to strike the affidavits of Thomas Sweeney and Michele Meredith which were filed in support of plaintiff's motion for summary judgment. For the following reasons, we grant the defendants' motion for summary judgment and deny plaintiff's motion for summary judgment. We grant in part and deny in part defendants' motion to strike the affidavits.

### BACKGROUND

The material facts of this case are not in dispute. On or about July 13, 1988 defendants Joseph Darovec and Victoria Loguidice Darovec executed and delivered to plaintiff Maryland National Bank ("MNB") a certain Marine Promissory Note in consideration of a loan in the amount of $94,000 made by MNB to defendants. Defendants then executed and delivered a Marine Security Agreement to MNB on July 13, 1988, granting MNB a first lien upon a certain vessel duly documented and licensed as a vessel of the United States of America named Grape Vine, Official No. 938931.

On December 5, 1988 Irmgard McNally, attorney in fact for the defendants, executed a first preferred mortgage on the vessel on behalf of defendants and in favor of MNB. Said preferred mortgage was duly filed with the United States Coast Guard, Office of Vessel Documentation Cleveland Ohio and was recorded and indexed on December 8, 1988 at 8:45 a.m. in Book PM–58, Instrument 35.

Defendants defaulted in making payment to MNB under the terms of the aforesaid marine promissory note. MNB claims that the balance due, after all credits and set offs, from defendants to MNB is $68,736.19 which balance is in default. On May 11, 1990, payments on the marine promissory note being in default, a notice of intention to repos-

sess the vessel was sent to the debtors. The May 11, 1990 letter informed defendants of the steps necessary to cure their default and recover the boat. MNB repossessed the vessel by self help without the use of force or breach of the peace on or about May 30, 1990.

A notice of repossession and resale of the vessel dated June 28, 1990 was mailed to defendants on June 29, 1990. On or about September 26, 1991, MNB caused the vessel to be sold by private sale to Brian Stover and Kathryn Stover. MNB claims that its repossession, sale, and application of proceeds of resale of the aforesaid vessel was in compliance with Maryland Commercial Code § 12–1021.

On March 5, 1992, MNB forwarded to defendants a letter advising them of the sale and demanding the deficiency amount due under the Marine Promissory Note of $68,-736.19. Said deficiency has not been paid to date by defendants. On March 24, 1992, MNB brought this action seeking to recover the alleged $68,736.19 deficiency.

### DISCUSSION

Summary judgment is appropriate when the movant demonstrates "the absence of a genuine issue as to any material fact, and for these purposes the material ... lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The nonmoving party may not merely rest on its pleadings, but must demonstrate, through specific evidence, that there remains a genuine issue of triable fact. *Lister v. Stark,* 942 F.2d 1183, 1187 (7th Cir.1991) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)); *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims...." *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553.

#### A. The Ship Mortgage Act

The Ship Mortgage Act, 46 U.S.C. §§ 31301–31343 (1989) (the "Act"), was originally enacted in 1920 to bring ship mortgages

within the jurisdiction of the admiralty courts. The object of the Act is to make the mortgagee secure, and the Act grants properly recorded ship mortgages preferred status over most maritime liens. *The Thomas Barlum*, 293 U.S. 21, 39, 55 S.Ct. 31, 36, 79 L.Ed. 176 (1934); *see generally* Gilbert L. Fontenot, *Plugging the Leaks in the Ship Mortgage Act: Nate Leasing Co. v. Wiggins,* 16 Tul.Mar.L.J. 213 (1991). A creditor obtains a preferred mortgage under § 31322 of the Act if the mortgage: 1) includes the whole of the vessel; 2) covers a documented vessel; 3) has as the mortgagee a federally insured depository institution; and 4) is filed in substantial compliance with § 31321. In this case, there is no dispute that MNB's preferred mortgage meets the requirements of § 31322 of the Act and has been appropriately filed. The parties instead dispute the effect of § 31325 which provides for enforcement of the preferred mortgage lien in the event of a default. Section 31325 provides in part that:

(b) On default of any term of the preferred mortgage, the mortgage (sic) may—

(1) enforce the preferred mortgage lien in a civil action in rem for a documented vessel, a vessel to be documented under chapter 121 of this title, or a foreign vessel; and

(2) enforce a claim for the outstanding indebtedness secured by the mortgaged vessel in—

(A) a civil action in personam in admiralty against the mortgagor, maker, co-maker, or guarantor for the amount of the outstanding indebtedness or any deficiency in full payment of that indebtedness; and

(B) a civil action against the mortgagor, maker, comaker, or guarantor for the amount of the outstanding indebtedness or any deficiency in full payment of that indebtedness; and

(c) The district courts have original jurisdiction of a civil action brought under subsection (b)(1) or (2) of this section. However, for a documented vessel, a vessel to be documented under chapter 121 of this title, or a foreign vessel, this jurisdiction is exclusive of the courts of the States for a civil action brought under subsection (b)(1) of this section.

MNB admits that it did not comply with the procedures for foreclosing a ship mortgage established under the Act and the Judicial Sales Act, 28 U.S.C. §§ 2001–2007, which governs the sale of a vessel in a Ship Mortgage Act foreclosure. The Judicial Sales Act provides that no vessel may be sold at a private sale unless the court appoints three disinterested appraisers and the vessel is sold for at least two-thirds of the appraised value. See 28 U.S.C. §§ 2001, 2004. However, neither the Act nor the Judicial Sales Act addresses the validity of a non-judicial foreclosure of a preferred ship mortgage—the manner pursuant to which MNB proceeded.

MNB claims that it should be entitled to recover for the deficiency because the repossession was conducted pursuant to the Maryland Commercial Code § 12–1021. MNB also contends that federal law does not prevent the parties to a ship mortgage from contractually agreeing that state procedures for foreclosure may be used. In this regard, MNB generally claims that the repossession is valid because it was conducted in compliance with the provisions of the Marine Security Agreement. However, we were unable to find any such provision in the Marine Security Agreement which might permit MNB to seize and sell the vessel extrajudicially, although we did find one provision in the ship mortgage which might lend itself to such an interpretation. Article II, paragraph 1(C) of the mortgage provides that the mortgagee (MNB) may:

Retake the vessel without legal process at any time wherever the same may be ... and/or sell the vessel, free from any claim by Owner of any nature whatsoever, in the manner provided by law; to the extent permitted by law, such sale may be public or private, without notice, without having the vessel present, and Mortgagee may become the purchaser.

MNB claims that this provision evidences the parties' contractual agreement to grant the mortgagee the option to use self-help under

Maryland law.[1]

Defendants argue that federal law provides the exclusive manner of foreclosing a ship's mortgage and that MNB's extrajudicial seizure and sale prevents it from collecting a deficiency judgment. Defendants argue that MNB was exclusively limited to a judicial foreclosure and sale. The issue presented, therefore, is whether the Act provides a comprehensive and exclusive process for foreclosure which must be followed in all cases, or whether the mortgagee may use state law self-help methods to repossess the vessel and conduct a private foreclosure sale.

While a few courts have considered this issue, the holdings have been anything but uniform. The lack of unanimity among the courts has led to confusion among mortgagees and mortgagors. In *J. Ray McDermott & Co., v. Vessel Morning Star*, 457 F.2d 815, 818 (5th Cir.1972), *cert. denied*, 409 U.S. 948, 93 S.Ct. 271, 34 L.Ed.2d 218 (1972), the mortgagee sought to recover a deficiency on a vessel sold at a public judicial sale, which was conducted without an appraisal prior to the sale. The mortgagor objected to the collection of the deficiency, arguing that under Louisiana law, an appraisal was necessary for a public judicial sale. *Id.* at 817. The court stated that the Judicial Sales Act, in conjunction with the Ship Mortgage Act, provides "a comprehensive procedure for the foreclosure of a preferred ship's mortgage" and does not require an appraisal prior to a public judicial sale. *Id.* at 818. The court held that state law does not apply to impose additional requirements which are not required under federal law. *Id.* at 818–19. While the court did not directly address the legitimacy of a non-judicial private foreclosure sale, it stated in dictum, however, that "state law may occasionally be utilized to fill the gaps in an incomplete and less than perfect maritime system" but only when state law does not contravene or prejudice the Act or any other act of Congress, nor upset the uniformity the Act attempts to foster. *Id.* at 818.

Defendants also rely on *Bank of America Nat. Trust and Sav. Ass'n v. Fogle*, 637 F.Supp. 305 (N.D.Cal.1985). In *Fogle*, a mortgagee sold a vessel secured by a preferred mortgage at a private non-judicial foreclosure sale, pursuant to California's U.C.C. provisions, without an appraisal as required by § 2001(b) of the Judicial Sales Act. The mortgagee contended that the Act and the Judicial Sales Act were silent on the question of whether mortgagees were permitted private non-judicial foreclosure sales, as § 2001(b) of the Judicial Sales Act addresses only judicially-approved private sales. The mortgagee argued that he was free to contractually reserve the right to invoke California U.C.C. provisions providing a right to a non-judicial private foreclosure sale. *Id.* at 306–07. The court held that § 2001(b) "authorizes private sales so long as certain requirements are met. One of those requirements is court approval. By specifically and explicitly requiring judicial approval for private sales, Congress obviously meant to disapprove of extrajudicial private sales." *Id.* at 307. The court concluded that the Act was not silent and there was "simply no room for the operation of state law" on the issue of non-judicial foreclosure sales for a preferred vessel mortgage. *Id.*

Most recently, in *Nate Leasing Co., Inc. v. Wiggins*, 114 Wash.2d 508, 789 P.2d 89, 90 (1990), the Washington Supreme Court held that the federal Act is exclusive and that state law cannot intervene. In that case, the mortgagee repossessed the vessel and privately sold the vessel without having it appraised prior to the sale. *Id.* 789 P.2d at 90. In the resulting deficiency action, the mortgagor contended that a deficiency judgment was not warranted because the Act applied and required an appraisal of the vessel prior to the sale. The mortgagee argued that Washington's U.C.C. provisions applied and, therefore, did not require an appraisal prior to the sale. The Washington Supreme Court held that the Act, in conjunction with other federal statutes, provides the exclusive remedies for the foreclosure of a preferred mortgage and that recovery of a deficiency is determined by federal common law. *Id.* at

---

1. The contracts between the parties indicate that Maryland law shall govern, and neither party disputes the application of Maryland law to this case.

95. Thus, the *McDermott, Fogle,* and *Nate Leasing* line of cases support the defendants' arguments that a mortgagee should be denied recovery of his deficiency claim when he ignores the provisions of the Act and federal law, and instead, attempts to operate under the realm of state law by self-help repossession and private sale.

The opposing view proposed by MNB is that when the Act is silent, state law may be applied to fill in the gaps. In *Price v. Seattle–First Nat. Bank,* 582 F.Supp. 1568 (W.D.Wash.1983), the mortgagee used a self-help provision in a preferred ship mortgage contract to repossess the vessel and did not have an appraisal done prior to the non-judicial auction. *Id.* at 1569. The court held that the mortgagee's use of the self-help provision in the mortgage, which allowed repossession and private foreclosure rather than the use of the procedures in the Act, did not bar the mortgagee from recovering a deficiency under state law. *Id.* at 1569–70.

In *Dietrich v. Key Bank,* 693 F.Supp. 1112 (S.D.Fla.1988), the court upheld a mortgagee's right to contract out of the Act and the Judicial Sales Act, and into the rights and remedies of the U.C.C. by expressly stating so in the mortgage security agreement. Statutory authority for this decision was grounded on the Act's section 951 [2], which provides that upon default, the preferred mortgage "may be enforced by the mortgagee by suit in rem in admiralty." *Id.* at 1115. The court distinguished the *McDermott* decision as holding only that "state law cannot of its own accord vary the requirements established by [the Judicial Sales Act]". *Id.* at 1116. The court disagreed with the *Fogle* decision which held that § 2001 permits only judicially-approved private sales. *Id.* at 1117. Thus, the *Price* and *Dietrich* line of cases support MNB's position that the Act and its accompanying law are less than exclusive in the area of vessel foreclosures.

We believe that the cases which hold that the Act is not exclusive are the better reasoned cases. Financiers typically enforce their mortgages by means of self-help provisions provided by their state's commercial statutes, rather than comply with the more cumbersome and expensive judicial foreclosure proceedings. The *McDermott, Fogle,* and *Nate Leasing* decisions create an unduly harsh result—comply with the ambiguous federal law formalities or face the loss of one's deficiency claim. Such decisions serve to confuse and endanger ship financiers, contrary to the original purpose of the Act. See Fontenot, *supra,* at 223–24.

The provisions of the Act itself support the conclusion that the Act is not exclusive. Section 31325(b)(1) of the Act provides that a preferred mortgage *may* be enforced by the mortgagee by suit in rem in admiralty and sub-section (b)(2)(A) provides that the mortgagee *may* enforce its claim for outstanding indebtedness by suit in personam. Neither of these provisions *requires* a lienholder's repossession of a boat to be supported by a decree in a judicial foreclosure proceeding—they merely outline the Act's provision of a foreclosure remedy. The use of the word "may" rather than "must" indicates that a mortgagee may proceed under the Act to effectuate a foreclosure, but is not required to and may seek to proceed outside of the Act. Thus, the Act itself stops short of preempting extra-judicial repossessions and private sales.

Moreover, it is apparent from the regulations under the Act that extra-judicial maritime repossessions and private sales are contemplated by the Act. Section 67.07–11 of the Coast Guard regulations, entitled "Passage of title by extra-judicial repossession and sale", outlines requirements for documenting title to a vessel and purchases at an extra-judicial foreclosure sale, in compliance with the Act. 46 C.F.R. § 67.07–11 (1991).

Thus, we find that the Act provides the exclusive *judicial* mechanism for foreclosure of a ship mortgage and any remaining deficiency judgment. We urge Congress to fill in the gaps in the Act and to make clear whether the Act permits non-judicial foreclosures. Until then, we recognize the shortfalls of the Act and find the Act is not

---

**2.** Section 951 of the prior Act has now been incorporated into § 31325 of the new Act which

became effective January 1, 1989.

exclusive and does not prevent non-judicial foreclosures. When, as in this case, the mortgagee has conducted a non-judicial private sale outside of the Act, we look to state law and the contracts between the parties to ascertain whether a deficiency judgment is warranted.

### B. *Maryland Law*

■ In this case, we find that under state law and the contracts between the parties, MNB is not entitled to a deficiency judgment. MNB's marine security agreement is governed by Title IX (Secured Transactions) of the Maryland Commercial Code. Section 9–104 is entitled "Transactions Excluded From Title" and provides that Article 9 is not applicable to any "security interest subject to any statute of the United States, to the extent that such statute governs the rights of parties ... in particular types of property." The "official comment" to section 9–104(a) of the Maryland Commercial Code provides:

> Where a federal statute regulates the incidents of security interests in particular types of property, those security interests are of course governed by the federal statute and excluded from this Title. The Ship Mortgage Act, 1920, is an example of such a federal act.
>
> . . . .
>
> Even such a statute as the Ship Mortgage Act is far from a comprehensive regulation of all aspects of ship mortgage financing. That Act contains provisions on formal requisites, on recordation and on foreclosure but not much more. If problems arise under a ship mortgage which are not covered by the Act, the federal admiralty court must decide whether to improvise an answer under "federal law" or to follow the law of some state with which the mortgage transaction has appropriate contacts. The exclusionary language in paragraph (a) is that this Title does not apply to such security interest "to the extent" that the federal statute governs the rights of the parties. *Thus if the federal statute contained no relevant provision, this Title could be looked to for an answer.* (emphasis added).

Maryland Commercial Code § 12–1021 provides the statutory framework for repossession and sale of tangible personal property under a loan agreement with a consumer borrower. MNB argues that if it violated § 12–1021, its violations were minor and should not form the basis for denial of its deficiency judgment. However, because MNB failed to follow various aspects of § 12–1021, its repossession was not "in the manner provided by law" or "to the extent permitted by law" as required by contract between the parties. Therefore, MNB is not entitled to recover for the deficiency.

Section 12–1021(e) provides:

[w]ithin 5 days after the credit grantor repossesses the tangible personal property the credit grantor shall deliver to the consumer borrower personally or send to him at his last known address by registered or certified mail, a written notice which briefly states:

1. The right of consumer borrower to redeem the tangible personal property, and the amount payable for it;

2. The rights of the consumer borrower as to resale, and his liability for a deficiency; and

3. The exact location where the tangible personal property is stored and the address where any payment is to be made.

MNB repossessed the vessel on May 30, 1990. No such notice was provided to defendants within five days after the May 30, 1990 repossession.[3] The notice mailed on June 29, 1990 failed to comply with § 12–1021(e) because it was mailed more than five days after the May 30, 1990 repossession. MNB's notice was therefore defective in delivery by 24 days. Subsection (e)(1) provides that the notice of right to redeem shall state the "amount payable for it." Thus, MNB's June 29, 1990 notice was further defective by virtue of MNB's failure to provide an actual

---

**3.** MNB claims that it sent defendants a May 11, 1990 letter which notified defendants of their default and detailed defendants rights to redeem the property. Section 12–1021(c) deals with the notice of intent to repossess. MNB has apparently complied with this subsection, but defendants are not claiming a violation of the notice of intent to repossess. Rather, defendants claim that MNB violated 12–1021(e) (notice of right to redeem) and 12–1021(j) (manner of sale).

dollar figure for "costs of retaking" and "storage charges". These charges were listed as "not available" on MNB's notice. Thus, the June 29, 1990 notice failed to comply with numerous statutory requirements of Maryland Commercial Code § 12–1021(e).

MNB also failed to comply with Maryland Commercial Code, § 12–1021(j) which provides in part:

> [a]t least 10 days before the sale, the credit grantor shall notify the consumer borrower in writing of the time and place of the sale, by certified mail, return receipt requested, sent to the consumer borrower's last known address. Any sale of repossessed property must be accomplished in a commercially reasonable manner.

No such notice of sale was ever provided to either defendant. MNB's failure to apprise defendants of the time and place of sale necessitates an adjudication pursuant to the Maryland Commercial Code that MNB shall not be entitled to any deficiency judgment. MNB also failed to comply with the provisions of § 12–1021(j)(2) and (3) which require it to file a copy of the accounting with the Commissioner of Consumer Credit.

The failure to notify debtors of the time and place of a proposed sale of collateral was the same issue raised in *Maryland Nat. Bank v. Wathen*, 288 Md. 119, 414 A.2d 1261 (1980). The *Wathen* court stated:

> It is manifest that the debtor without notice of the sale can be effectively prevented from exercising his right of redemption. Furthermore even if the debtor is not in a position to redeem, if he has notice, he may still be able to refinance and must therefore be capable of arranging for potential creditors to inspect the collateral. Alternatively, a debtor with notice may be able to procure interested buyers to drive up the level of competitive bidding. At the very least, notice provides the opportunity to attend the sale to insure that it is commercially reasonable. To permit recovery of a deficiency judgment absent notice would effectively nullify these important debtors' rights and permit a continuation of the evil which the Commercial Code sought to correct ... It was the secret disposition of collateral by chattel mortgage owners and others which ... the Code sought to correct.... We see no need to undermine the protection which these provisions were intended to afford.

414 A.2d at 1263–64 (citations omitted).

Therefore, Maryland law requires a finding that no deficiency judgment is available against defendants by virtue of MNB's failure to explicitly comply with statutory notice and sale procedures of the Maryland Commercial Code. *See, e.g., First Nat. Bank of Maryland v. DiDomenico*, 302 Md. 290, 487 A.2d 646 (1985). Therefore, summary judgment must be granted in favor of defendants.

### C. Motions To Strike

Defendants have moved to strike the affidavits of Thomas Sweeney and Michele Meredith which were filed by MNB in support of its motion for summary judgment. With regard to the Sweeney affidavit, defendants claim that the affidavit should be stricken because it was prepared for the purpose of transferring title of the vessel and is not an original affidavit filed in support of the motion. We will accept the affidavit as filed in support of MNB's motion for summary judgment. Defendants also object to paragraphs 6 and 7 of the Sweeney affidavit and paragraphs 4, 5, and 8 of the Meredith affidavit which aver that the repossession and letter were in compliance with the Maryland Commercial Code and the Marine Security Agreement. We agree that these averments are conclusions of law and should be stricken.

Defendants next claim that the allegations of paragraph 8 of the Sweeney affidavit and paragraph 6 of the Meredith affidavit should be stricken because the exhibits reveal that the notice was mailed only to Joseph Darovec of Rosedale, Illinois and was post marked on June 29, 1990. We take notice that the letters which MNB has attached as exhibits reveals that letters were drafted to both defendants, but that MNB has attached only the certified mail receipt for Joseph Darovec. Moreover, although the date on the letters is June 28, 1990, the postmark date is June 29, 1990 and the date of delivery is listed as July 5, 1990. Defendants next object to the allegations of paragraphs 9–10 of the Sweeney affidavit and paragraph 7 of the Meredith

affidavit because whether the Bank was acting as an agent of the defendants is a conclusion of law. We agree and strike those portions of the paragraphs which aver that the Bank was acting as an agent for defendants. With regard to the affidavit of Michele Meredith, defendants argue that the allegations in paragraphs 2 and 9 regarding the sum owed of $68,736.19 is a legal conclusion and without foundation. Since we are granting defendants' motion for summary judgment and denying MNB's motion, we need not consider the amount allegedly owed.

## CONCLUSION

For the foregoing reasons, we grant defendants' motion for summary judgment and deny plaintiff's cross-motion for summary judgment. We grant in part and deny in part defendants' motion to strike the affidavits of Michele Meredith and Thomas Sweeney. This case is hereby terminated, and all other pending motions are deemed moot by this order.