United States Court of Appeals,

Eleventh Circuit.

No. 94-4093.

Leslie S. DIETRICH, Plaintiff-Counter Defendant-Appellant,

v.

KEY BANK, N.A., Defendant-Counter Plaintiff-Appellee,

Gilman Yacht Sales, Inc., Jeffrey Shearer, Cracker Boy Marina, Inc., Defendants.

Jan. 3, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 87-8407-CIV), Jose A. Gonzalez, Jr., Judge.

Before TJOFLAT, Chief Judge, ANDERSON, Circuit Judge, and FAY, Senior Circuit Judge.

ANDERSON, Circuit Judge:

This case involves the construction of the Ship Mortgage Act of 1920, 46 U.S.C.A. § 31301-31343 (West Supp.1995) (former version at 46 U.S.C.A. § 911-984 (West 1995))[1] ("the Act"). The question

---

[1] Although the former version was in place and in effect until January 1, 1989, we refer to the version now in existence, i.e., 46 U.S.C.A. § 31301-31343. In reorganizing the Ship Mortgage Act, Congress made some substantive changes. However, none of those changes have any bearing on the issues in this case. Also important for our analysis is that the coverage of the Act, i.e., its scope, is substantially the same as before the 1988 Act.

The section of the Act central to the issue in this appeal is § 31325(b). The House Report indicates that the only major substantive change Congress made to that subsection was "by allowing a nonadmiralty civil action to be brought against the mortgagor, comaker, or guarantor for the amount of the outstanding indebtedness secured by the vessel or any deficiency in paying off that indebtedness." H.R.Rep. No. 918, 100th Cong., 2d Sess., at 44, 1988 U.S.Code Cong. & Ad.News at pp. 6104, 6137. The report notes that "[t]his change allows an action to be brought even when the vessel is outside U.S. jurisdiction. This section will also allow the action to be brought against the

presented here has not been decided by any other circuit: whether the provisions for enforcement of the Ship Mortgage Act set forth at 46 U.S.C.A. § 31325 provide the exclusive procedures for the enforcement of preferred ship mortgage liens or whether parties to preferred ship mortgages can contract to use state self-help repossession and resale procedures. We hold that the Ship Mortgage Act does not prohibit state self-help enforcement procedures when they are authorized by the underlying contracts.

## I. FACTUAL BACKGROUND

On April 30, 1982, Key Bank, N.A. ("Key Bank") financed Leslie Dietrich's purchase of a thirty-five foot, 1980 Mako sport fishing boat. Dietrich signed a security agreement giving Key Bank a security interest in the boat and promising to repay $97,300.00 in monthly installments at an annual interest rate of 18%. The security agreement was to protect the lender until the First Preferred Ship Mortgage was duly recorded. On August 30, 1983, over a year later, Dietrich executed the First Preferred Ship Mortgage.[2] Among other things, that mortgage provided for payment of the debt on the same monthly installment terms and with the same interest provided in the security agreement, and for acceleration of the entire debt in the event of default. In the summer of 1986, Dietrich defaulted on her note. After notifying her of the payments she owed, Key Bank accelerated the note and then peacefully repossessed the vessel in December, 1986. The vessel

comaker or guarantor of the mortgage." *Id.*

[2]The parties agree that the preferred mortgage executed by Dietrich was validly recorded and had the status of a preferred mortgage under the statute.

was then sold by Key Bank in a private sale to one of three bidders for $40,000.

Afterwards, Dietrich filed suit against Key Bank alleging breach of contract and conversion, [3] and Key Bank filed a counterclaim seeking a deficiency judgment. Dietrich moved for partial summary judgment on Key Bank's counterclaim contending that under the Ship Mortgage Act, Key Bank was prohibited from using self-help repossession to enforce the preferred mortgage. She also contended that even if it were lawful to contract for self-help repossession and resale, the contracts in this case did not make such provisions. The district court decided that the contracts between the parties did authorize Key Bank to use Florida law to repossess peacefully and sell its collateral upon the debtor's default and that the Ship Mortgage Act did not prohibit Key Bank from pursuing these contracted for state remedies.[4] After a non-jury trial in December of 1993 on the remaining claims,[5] the district court entered a deficiency judgment against Dietrich, the amount of which is not at issue in this appeal.

On appeal, Dietrich reasserts the grounds of her summary judgment motion. She contends that the Ship Mortgage Act's statutory enforcement scheme, i.e., foreclosure either in rem or in

---

[3]Dietrich originally filed suit in Palm Beach County Circuit Court. The action was removed to the district court.

[4]The district court's thoughtful opinion is published. 693 F.Supp. 1112 (S.D.Fla.1988).

[5]These issues included Key Bank's deficiency claim as well as Dietrich's affirmative defenses that the bank failed to give proper notice and that the resale of the collateral was not done in a commercially reasonable manner.

personam in admiralty, is the exclusive remedy for default of a preferred mortgage lien.  She also argues that the district court erred in concluding that the underlying contracts provided for state self-help repossession and resale remedies.

We first address whether the underlying contracts provide for state law self-help repossession and resale, and then we determine whether the Ship Mortgage Act precludes such remedies.

### II. CONSTRUCTION OF THE UNDERLYING CONTRACTS

Dietrich argues that she did not contract for state law self-help repossession and resale in the mortgage contracts.  Her argument fails.  It is uncontested that once perfected, the terms of the First Preferred Ship Mortgage governed,[6] and that document contemplated repossession and resale.  At least three paragraphs in the document explicitly mention the availability of repossession and two mentioned resale after repossession.  For example, Paragraph 20 states:

> SALE OR USE OF REPOSSESSED VESSEL.  If you repossess the Vessel, you may, in my name, lease, charter, operate or otherwise use the Vessel as you think advisable, being accountable for net profits, if any, and keep the Vessel free of charge at my premises or elsewhere, at my expense.  For such purpose and subject to any applicable state regulation, you and your agents are irrevocably appointed my true and

[6]Dietrich contends that the lower court mistakenly relied on language set forth in the Security Agreement in determining that she had contracted for self-help remedies.  (Under its "Additional Terms and Conditions", the Security Agreement stated, "To protect you until a First Preferred Ship Mortgage is duly recorded, I give you a security interest under the Uniform Commercial Code in the Vessel and any equipment which may become a part of the Vessel in the Future....")  She argues that that reliance was misplaced because the Security Agreement was not binding after the execution of the First Preferred Ship Mortgage. However, the First Preferred Ship Mortgage itself allowed for self-help repossession and sale;  therefore, her argument is misplaced.

lawful attorneys-in-fact to make all necessary transfers of the Vessel upon resale after repossession, in my name and stead.

This paragraph unequivocally anticipates both self-help repossession and self-help resale. Both are provided for under Florida law. Fla.Stat.Ann. § 679.503. [7] Furthermore, this paragraph specifically provides that state regulation would govern the mortgagee's transfer of vessel upon resale after repossession. Other language in the document contemplates repossession and resale. Paragraph 16 of the First Preferred Ship Mortgage required Dietrich to sign and deliver those documents to the purchaser which would help the mortgagee "carry out a resale of the Vessel in the event it becomes necessary for [the mortgagee] to repossess it." At paragraph 19, the document set forth how the mortgagor might redeem the vessel should it be repossessed and stated that the mortgagor's "right to redeem will end when the repossessed Vessel has been sold."

Thus, we reject Dietrich's argument that the contracts did not

---

[7]Section 679.503, entitled "Secured party's right to take possession after default" states in part:

> Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action.

Section 679.504, entitled "Secured party's right to dispose of collateral after default; effect of disposition", states in part:

> A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Any sale of goods is subject to chapter 672.

allow for self-help repossession and resale upon default.  We therefore turn to the Ship Mortgage Act issue.

## III. THE SHIP MORTGAGE ACT OF 1920

A. *Background*

Before the passage of the Ship Mortgage Act of 1920, vessel mortgage liens could not be enforced in admiralty court.  *See The Thomas Barluum,* 293 U.S. 21, 32, 55 S.Ct. 31, 33, 79 L.Ed. 176 (1934).  State court enforcement was ineffective because state courts could not affect maritime liens.  Thus, a ship mortgagee's security interest was not satisfactorily protected. *See id.* at 39, 55 S.Ct. at 36 (pointing out that mortgage security on ships was practically worthless).  The Ship Mortgage Act provided a means through which vessel mortgages could be given a preferred status and could be enforced in admiralty.  The underlying purpose of the Act was to encourage investment in shipping.  *See id.* at 40, 55 S.Ct. at 37 (indicating fundamental purpose of Congress was to promote confidence in ship mortgages); *Merchants & Marine Bank v. The T.E. Welles,* 289 F.2d 188, 193-194 (5th Cir.1961) ("[P]assage of the Ship Mortgage Act came about primarily from the necessity of affording substantial security to persons supplying essential financing to the shipping industry.")

The Act itself did at least three important things—it set forth the requirements for recording preferred mortgages, established that only maritime liens would have priority over ship mortgages, and provided for a means of enforcing preferred mortgage liens in admiralty.

B. *Federal Preemption*

Dietrich argues that the statutory provisions for enforcement of preferred mortgage liens under the Act, 46 U.S.C.A. § 31325(b) (formerly 46 U.S.C.A. §§ 951, 954), are exclusive remedies and that, as such, they preempt state law remedies. Specifically, 46 U.S.C.A. § 31325(b) provides:

> (b) On default of any term of the preferred mortgage, the mortgage[e] may—
>
> > (1) enforce the preferred mortgage lien in a civil action in rem for a documented vessel, a vessel to be documented under chapter 121 of this title, or a foreign vessel; and
> >
> > (2) enforce a claim for the outstanding indebtedness secured by the mortgaged vessel in—
> >
> > > (A) a civil action in personam in admiralty against the mortgagor, maker, comaker, or guarantor for the amount of the outstanding indebtedness or any deficiency in full payment of that indebtedness; and
> > >
> > > (B) a civil action against the mortgagor, maker, comaker, or guarantor for the amount of the outstanding indebtedness or any deficiency in full payment of that indebtedness....

The statute itself makes no statement with respect to state law except in § 31307, which established that the statute superseded the provisions of state law conferring liens for necessaries on vessels insofar as such statutes purported to create rights of action to be enforced by suits in rem in admiralty:

> This chapter supersedes any State statute conferring a lien on a vessel to the extent the statute establishes a claim to be enforced by a civil action in rem against the vessel for necessaries.

46 U.S.C.A. § 31307. That limited preemption does not affect the self-help remedies at issue here. The Ship Mortgage Act contains no direct expression of congressional intent to preempt state law allowing for self-help repossession and resale.

The question presented is whether these provisions for enforcement of preferred mortgage liens preempt state law. Recently, the Supreme Court stated:

> In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law [cit.] or if federal law so thoroughly occupies a legislative field " "as to make reasonable the inference that Congress left no room for the States to supplement it.' "

*Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (citations omitted). Because we find no express congressional command, we must determine whether state law actually conflicts with the federal statute or, alternatively, whether federal law thoroughly occupies the legislative field.

1. Whether State Self-help Repossession and Sale Conflicts with Federal Law.

We first determine whether state law is preempted because " "it actually conflicts with a federal statute.' " *International Paper Co. v. Ouellette,* 479 U.S. 481, 491, 107 S.Ct. 805, 811, 93 L.Ed.2d 883 (1987) (quoting *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 158, 98 S.Ct. 988, 991, 55 L.Ed.2d 179 (1978)).

> "Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility,' ... or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress...."

*Hillsborough County, Fla. v. Auto. Med.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) (citations omitted). In the case at bar, there is no direct conflict between the state and federal law. *Cf. Nat G. Harrison Overseas Corp. v. American Barge Sun Coaster,* 475 F.2d 504, 506 (5th Cir.1974) (where direct conflict existed between the state usury laws and the federal

statutory provision that the mortgage may bear such rate of interest as may be agreed upon); *J. Ray McDermott & Co., Inc. v. The Vessel Morning Star,* 457 F.2d 815 (5th Cir.) (en banc), *cert. denied,* 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 218 (1972) (where direct conflict existed because under state law any deficiency judgment was forfeited by conducting a public sale without an appraisal, whereas under federal law an appraisal was not required).

The federal statute provides procedures for judicial foreclosure and sale. As discussed previously, 46 U.S.C.A. § 31325(b) allows for enforcement of a preferred mortgage lien in a civil action in rem or a civil action in personam and sets forth procedures for judicial enforcement.[8] However, the Act nowhere describes the procedures to be followed when parties to a preferred ship mortgage seek to enforce the mortgage using nonjudicial, self-help remedies. Thus, no direct conflict exists. 2 *Benedict on Admiralty* § 70f (7th ed. 1995).

It cannot be argued that state law stands as an obstacle to the full accomplishment of the purposes and objectives of Congress. The purpose of Congress was to create a means of enforcing mortgages in admiralty in order to promote ship financing. Allowing financiers to contract for state law self-help remedies in addition to their statutory right to foreclose in admiralty does

---

[8]The Act provides for the termination of all liens upon a judicial sale in rem, the lien then attaching to the sale proceeds. 46 U.S.C.A. § 31326. Because these remedies are judicial, any sale held pursuant to these remedies would be court-ordered and, as such, governed by 28 U.S.C.A. §§ 2001 and 2004.

not undermine this purpose. Rather, allowing for supplementation through state law furthers the objectives of Congress by providing another avenue for enforcement of vessel mortgage liens.

2. Whether the Ship Mortgage Act Occupies the Field.

Having determined that the Act did not explicitly preempt state law, and that there is no conflict between the state and federal law, we must determine whether Congress intended to occupy the field. We can infer an "intent to occupy a given field to the exclusion of state law ... where the pervasiveness of the federal regulation precludes supplementation by the States" or "where the federal interest in the field is sufficiently dominant...." *Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 300, 108 S.Ct. 1145, 1150, 99 L.Ed.2d 316 (1988). We can also infer an intent to preempt where " "the object sought to be obtained by the federal law and the character of the obligations imposed by it' " reveal a purpose to preclude the enforcement of the state laws on the same subject. *Id.* (citation omitted).

Although enforcement of preferred mortgage liens is a federal interest, it is not the sort of uniquely federal interest which is so dominant it would create an inference that Congress intended to preempt state law in that field. *Cf. Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941) (concluding that immigration and foreign affairs were such predominant federal interest). Nor is this a situation in which the enforcement of state law, i.e., self-help repossession and resale, poses a serious danger to the administration of the federal program. Rather, a mortgagee remains free to pursue a federal remedy notwithstanding the fact that he

contracted for the option to use a state law remedy.  As long as the conveyances and sales are properly recorded with the customs officials, the federal scheme is not endangered.[9]

It cannot be said that the object sought to be obtained by the Act and the character of the obligations imposed reveal a purpose to preclude enforcement of nonconflicting state law on the same subject.  While it is true that Congress sought to provide a remedy in an area in which state law was insufficient, neither the object sought to be obtained by the Act, i.e., preferred status of mortgage liens enforceable in admiralty, nor the obligations imposed by the statute, i.e., various statutory conditions and documentation requirements, indicate that Congress's purpose was to preclude state law enforcement of preferred mortgages in the manner proposed in this case.  *Cf. Howard v. Uniroyal, Inc.,* 719 F.2d 1552 (11th Cir.1983) ("[P]re-emption and implied private cause of action analyses are distinct modes of divining Congressional intent.")

The appellant seems to rely on the argument that the pervasiveness of federal regulation precludes supplementation by the states.  Her argument is undermined by a close look at the statute itself.  The fact that the statute does provide two means to enforce preferred mortgage liens does not, without more, indicate that the federal statute is pervasive.[10]  *Compare*

---

[9]Passing of title by extra-judicial repossession and resale is provided for in the Coast Guard regulations.  46 C.F.R. § 67.83 (1994).

[10]The statute provides for enforcement in a civil action in rem and also in a civil action in personam.  With respect to the former, the jurisdiction of the federal courts is exclusive, but with respect to the latter, there is concurrent jurisdiction with the state courts.

*International Paper Co. v. Ouellette,* 479 U.S. 481, 107 S.Ct. 805, 93 L.Ed.2d 883 (1987) (finding that Congress intended Clean Water Act to establish all-encompassing program of water-pollution regulation where Act applied to all point sources and virtually all bodies of water) *and Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984) (deciding FCC occupied field where it pervasively regulated importation of distant broadcast signals, signal carriage generally, and technical standards) *with Pac. Gas & Elec. v. St. Energy Resources. Conserv.,* 461 U.S. 19, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983) (finding that despite comprehensiveness in safety regulations in Atomic Energy Act of 1954, Congress intended states to retain its other traditional roles in regulating utilities, and concluding it almost inconceivable that Congress would leave regulatory vacuum).

Because the language of the Act is permissive—i.e., the Act uses the permissive "may" rather than exclusive "must" with respect to its enforcement procedures—and because the Act is silent with respect to self-help repossession and resale, we are drawn to the conclusion that the federal law is not so pervasive that it thoroughly occupies the field. This reasoning accords with that of a majority of the cases and treatises which have squarely addressed the question. *See Merchants & Marine Bank v. T.E. Welles,* 289 F.2d 188, 194 (5th Cir.1961) ("With all of its statutory protections, [the Ship Mortgage Act] still has infirmities in contrast to land-based securities" and "the approach ought to be one of harmony with usual security principles."); *First Federal Sav. F.S.B. v. M/Y Sweet Retreat,* 844 F.Supp. 99, 102 (D.R.I.1994) ("The text of

the act indicates that it is not exclusive."); *Maryland National Bank v. Darovec,* 820 F.Supp. 1083, 1087 (N.D.Ill.1993) (concluding that the Act "stops short of pre-empting extra-judicial repossessions and private sales"); *Pee Dee State Bank v. The F/V Wild Turkey,* 1992 A.M.C. 1896, 1991 WL 355221 (D.S.C.1991); *Southland Financial Corp. v. O/S MARY EVELYN,* 248 F.Supp. 520, 522 (E.D.La.1965); *Chemical Bank v. United States Lines, S.A. (In Re McLean Ind.),* 132 B.R. 271 (Bankr.S.D.N.Y.1991); *Price v. Seattle-First Nat'l Bank,* 582 F.Supp. 1568 (W.D.Wash.1983); *see also* 8 *Benedict on Admiralty* § 1.06[C] (7th ed. 1995); Grant, Gilmore & Charles L. Black, Jr., *The Law of Admiralty,* 721 (2d ed. 1975).

The appellant contends that this circuit's precedent controls and that such precedent has held that the Ship Mortgage Act is comprehensive and pre-empts state law enforcement remedies. She cites two cases, *J. Ray McDermott & Co., Inc. v. The Vessel Morning Star,* 457 F.2d 815 (5th Cir.) (en banc),[11] *cert. denied,* 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 218 (1972), and *Nat G. Harrison Over. Corp. v. American Barge Sun Coaster,* 475 F.2d 504 (5th Cir.1974). However, both cases can be distinguished from the case at bar.

In *J. Ray McDermott,* the en banc court addressed whether the Ship Mortgage Act preempted state law with respect to federal judicial sales and the resulting deficiency judgments. *Id.* at 816-17. In that case there was a judicial foreclosure and a public, judicially-supervised sale; there was no appraisal before sale.

---

[11] In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

The district court granted a deficiency judgment in favor of the mortgagee after the judicial sale of a vessel. *Id.* at 816. The panel of the circuit court on appeal concluded that no deficiency judgment was due because Louisiana law provided that the sale of mortgaged property without an appraisal and under a waiver of appraisal fully satisfies and discharges the debt and the personal obligation of the debtor, thus forfeiting any deficiency judgment. Disagreeing with that opinion, the en banc court concluded that there was no void in the statutory scheme governing *the judicial sale procedure* such that supplementation by state law could be allowed. *Id.* at 818. The en banc court noted that the relevant federal statutes, 28 U.S.C.A. §§ 2001, 2004, [12] provided all the necessary requisites for judicial sales. Section 2001 specifically requires appraisal at judicially supervised private sales, but there was no provision for an appraisal in judicially-supervised public sales. Having expressly provided for appraisal in one context and not in another context, Congress implicitly excluded the necessity for appraisal at public sales. The en banc court then concluded that state law could not supplement the comprehensive federal provisions for sales held pursuant to court order because state and federal law conflicted. *Id.* at 818-19.

That holding does not control our decision in this case. This is not a situation in which a party has attempted to supplement the provisions governing the judicial sale of a vessel. Rather, here the mortgagee has chosen to forego judicial foreclosure and sale

---

[12]These two sections, though not referenced in the Ship Mortgage Act, govern judicial sales by federal courts.

altogether, opting instead for a self-help remedy.  Here there is no direct conflict of law.  Although the provisions for judicially supervised sales might be comprehensive, the statute is silent with regard to self-help remedies which do not invoke judicial supervision.

Despite the narrowness of its holding, the *J. Ray McDermott* decision did employ broad language in its description of the scope of the Ship Mortgage Act, specifically the following:

> It is clear that Congress intended that the ready availability of credit to support interstate commerce should not be impeded by parochial limitations and that the Act would wholly and completely supersede state law and practice in every respect.

*Id.* at 818.  Although *J. Ray McDermott* represents in effect an en banc decision of this court (sitting then as the former Fifth Circuit), the quoted language is dicta[13] and is not controlling in this case.  *J. Ray McDermott* involved a judicially-supervised foreclosure and a direct conflict between federal and state law.

Nor is *Nat G. Harrison Overseas Corp.,* 475 F.2d 504 (5th Cir.1974), controlling.  The issue in that case was whether the federal court's deficiency judgment should be purged of interest and or barred because the mortgage interest was usurious under the laws of Georgia.  The court concluded that U.S.C.A. § 926(d) (the substantive provision is now located at 46 U.S.C.A. § 31322(b)) controlled.  That subsection specifically allowed for "such rate of interest as is agreed by the parties" to the preferred mortgage. The court noted that state law not only introduced " "an

---

[13]See also other dicta to the opposite effect:  "state law may occasionally fill the gaps in an incomplete and less than perfect maritime system." *J. Ray McDermott,* 457 F.2d at 818.

undesirable lack of uniformity' " into the Act but that application of state law "flatly conflict[ed] with Section 926(d)".  475 F.2d at 506.  Again, though some language of this case might imply that the Act preempts state law in every respect, that is not its holding.  Like *J. Ray McDermott, Nat G. Harrison* involved a direct conflict between federal and state law.

Thus, neither *J. Ray McDermott* nor *Nat G. Harrison* foreclose our holding that the Ship Mortgage Act is not pervasive;  we hold that the Act does leave room for the operation of state law self-help remedies when authorized by contract.  We acknowledge that our holding is in conflict with *Bank of American National Trust & Savings Ass'n v. Fogle,* 637 F.Supp. 305 (N.D.Cal.1985), and *Nate Leasing Co., Inc. v. Wiggins,* 114 Wash.2d 508, 789 P.2d 89 (1990).  Contrary to our holding, the  *Fogle* court held that the Ship Mortgage Act exclusively governs all foreclosures of preferred ship mortgages, and thus preempts any state law provisions allowing for self-help, nonjudicial foreclosure sales.  The  *Fogle* court reasoned that because the statute provided for private sales as well as public sales within its procedures for judicially supervised foreclosure, Congress necessarily intended to preclude the use of self-help procedures which also include private sale. In *Nate Leasing,* the Supreme Court of Washington followed *Fogle* and relied upon the dicta in  *J. Ray McDermott,* which we have now disavowed.

In our opinion, the better reasoned cases support our holding, and not that of *Fogle* and *Nate Leasing.*  As noted above, we see no direct conflict between the state law self-help provisions and the

federal scheme; we disagree with the *Fogle* court's suggestion that Congress intended to preclude the use of nonjudicial, self-help remedies merely because Congress permitted private sales as well as public sales within its overall scheme of judicially supervised foreclosures. Although the federal scheme may well be comprehensive with respect to *judicial* foreclosure, the Act is silent with respect to self-help repossession and resale. As noted above, the self-help repossession and resale procedure poses no threat to the administration of the federal program, but rather is entirely consistent with the congressional purpose. The congressional purpose was to facilitate and promote financing for vessels, and in particular to provide an effective means for enforcing ship mortgages. We believe our holding is consistent with and supportive of that purpose. Our holding merely recognizes the availability of an optional remedy—one which may be less cumbersome and expensive in some circumstances[14]—in addition to the remedies provided by the federal statute. Nor do we believe our holding will undermine any congressional goal of providing uniformity. Not only is the self-help remedy optional, the relevant state law is now itself largely uniform as a result of the widespread adoption of the Uniform Commercial Code.

Finally, our holding is supported by the permissive language used by the federal statute in providing for its foreclosure remedies. We note also that our holding is supported by leading treatises on admiralty law. *See* 2 *Benedict on Admiralty* § 70f (7th

---

[14]Of course, the self-help remedy could not affect maritime liens, and thus will not be effective in many situations.

ed. 1995) (criticizing[15] the reasoning in *Fogle* and the dicta in *J. Ray McDermott* and indicating that the cases holding that the federal judicial remedies are not exclusive appear to be better reasoned).  *Accord,* Grant Gilmore and Charles L. Black, Jr., *The Law of Admiralty,* 718-27 (2d ed. 1975).[16]

For the foregoing reasons, we hold that the Ship Mortgage Act does not prohibit a mortgagee's use of state law self-help enforcement procedures when the parties have authorized those procedures by contract.

AFFIRMED.

---

[15]*Benedict on Admiralty* also recognizes that self-help repossession and resale was "generally acknowledged as an available remedy prior to the *Fogle* decision."  *Id.* at n. 129.

[16]In addition, we note that the Coast Guard regulations apparently recognize the availability of self-help repossession and resale remedies.  *See* 46 C.F.R. § 67.83 ("When title to a documented vessel has passed by reason of an extra-judicial repossession and sale, such passage must be established by....").  Because we reach our interpretation of the Act independently, we need not decide whether the Coast Guard regulations are entitled to deference.