## PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA, Plaintiff,

v.

**Rhonda M. MEDOWS, in her official capacity as Secretary of the Agency for Health Care Administration of the State of Florida, and Bob Sharpe, in his official capacity as Deputy Secretary of Medicaid, Agency for Health Care Administration of the State of Florida, Defendants.**

No. 4:01CV356–WS.

United States District Court, N.D. Florida, Tallahassee Division.

Dec. 28, 2001.

sis of Meniere's disease, she must file a new claim for disability.

Robert Wayne Pass, Carlton Fields Ward Etc., Martha Harrell Chumbler, Carlton Fields, Tallahassee, FL, David H. Remes, Steven J. Rosenbaum, Covington & Burling, Washington, DC, for Plaintiff.

Gary J. Anton, Stowell Anton & Kraemer, William H. Roberts, Steven Alfons Grigas, L. William Porter, Tallahassee, FL, for Defendants.

### ORDER DIRECTING ENTRY OF JUDGMENT IN DEFENDANTS' FAVOR

STAFFORD, District Judge.

Before the court is the magistrate judge's report and recommendation (doc. 34) docketed September 20, 2001. The magistrate judge recommends that the plaintiff's motion (doc. 7) for preliminary injunction be denied. The plaintiff has filed objections (doc. 43) to the report and recommendation, and the defendants have filed a response (doc. 46) to the plaintiff's objections. This court has reviewed the entire record, including the transcript of proceedings before the magistrate judge. For the reasons stated by the magistrate judge, this court adopts the magistrate judge's report and recommendation.

Also before the court are the parties' cross-motions (docs. 21 & 40) for summary judgment. The parties have been advised (doc. 48) that the motions would be taken under advisement as of a date certain. Because the motion for preliminary injunction and the cross-motions for summary judgment raise largely identical issues, the parties have suggested that concurrent resolution of the motions would be appropriate, indeed helpful. Again for the reasons stated by the magistrate judge, this court concludes that the plaintiff's motion for summary judgment and permanent injunctive relief must be denied.

The plaintiff asks this court to enjoin enforcement of two recently amended Florida laws: sections 409.91195 and 409.912(37) of the Florida Statutes. According to the plaintiff, these laws authorize the creation of a state Medicaid formulary in violation of subsection (d)(4) of section 1927 of the Social Security Act (the "federal Medicaid law"). The magistrate judge determined—and this court agrees—that sections 409.91195 and 409.912(a)(37), as amended in 2001, do not authorize the creation of a "formulary" as that term is used in the federal Medicaid law but, instead, allow the establishment of a "preferred drug list" and a "prior authorization program" expressly permitted by the federal Medicaid law. 42 U.S.C. § 1396r–8(d)(1)(A), (d)(4) & (d)(5). The plaintiff's arguments to the contrary are not persuasive.

Because the plaintiff has failed to demonstrate a conflict between the challenged Florida statutes and the federal Medicaid law, it is ORDERED:

1. The magistrate judge's report and recommendation is ADOPTED and incorporated by reference into this order.

2. The plaintiff's unopposed motion (doc. 47) for simultaneous oral argument is DENIED.

3. The plaintiff's motion (doc. 7) for preliminary injunction is DENIED.

4. The plaintiff's cross-motion (doc. 40) for summary judgment and permanent injunctive relief is DENIED.

5. The defendants' motion (doc. 21) to dismiss or, in the alternative, for summary judgment is GRANTED.

6. The clerk is directed to enter judgment in the defendants' favor.

## REPORT AND RECOMMENDATION

SHERRILL, United States Magistrate Judge.

Plaintiff has moved for a preliminary injunction. Doc. 7 (motion) and 8 (memorandum with attachments). Defendants have filed a response. Docs. 19 (memorandum) and 20 (affidavits). Plaintiff has filed a reply memorandum. Doc. 25. A hearing was held on September 20, 2001.

### I. Summary of the issues

Plaintiff is an organization of major pharmaceutical companies. Plaintiff's members currently account for more than 75% of the brand-name prescription drug sales in the United States. Doc. 8, p. 5. Defendants are state officers charged with implementation of the Florida Medicaid program.

The Medicaid program enacted by Congress in 1965 is a joint venture by the United States and each State. The United States pays about 56% of the cost in Florida, and Florida pays the rest. *Id.,* p. 6. The Medicaid program directly reimburses pharmacists for drugs which they provide to Medicaid beneficiaries. *Id.,* p. 6, n. 4. The pharmaceutical manufacturers who are members of Plaintiff sell prescription drugs in Florida through the Medicaid program.

Drug manufacturers are required by federal Medicaid law to enter into agreements with either the United States or a State to sell their products through the Medicaid program. The discount is 15.1%, with limited exceptions. If the drug manufacturers do not agree to the discount, their drugs are not used for Medicaid beneficiaries.

The State of Florida has recently enacted a law which provides that drug manufacturers must agree to an additional 10% discount in order that their drugs be included on the preferred list of drugs in the Florida Medicaid program. To date, manufacturers have refused to enter such agreements such that over 50% of the total drugs in the program are not on the preferred list. This has resulted in the omission of 1,006 of drugs from Florida's preferred list of Medicaid drugs. All of these omitted drugs are on the federal list because the manufacturers have entered into agreements with the United States, agreeing to the 15.1% discount.

The drugs which have been excluded from the list may still be prescribed by physicians to Medicaid beneficiaries. To do so, however, the physician must obtain prior approval for each prescription. Approval is automatic upon request. The approval procedure gives State officials a chance to advise the physician as to alternative drugs which are on the preferred list.

Plaintiff contends that it is the intent of Congress that the only drugs which a state may exclude from its Medicaid list are those which provide no significant, clinically meaningful therapeutic advantage. Plaintiff contends that Florida's law excludes drugs for which the manufacturer

has not agreed to rebate the additional 10% and thus conflicts with the federal statute. As a consequence, Plaintiff contends that the Florida statute violates the Supremacy Clause.

## II. The undisputed facts

Plaintiff conceded at oral argument that the material facts are not in dispute, and the question is primarily one of law. Federal Medicaid law provides: "In order for payment to be available under section 1396(a) of this title for covered outpatient drugs of a manufacturer, the manufacturer must have entered into and have in effect a rebate agreement described in subsection (b) of this section with the Secretary [of the Department of Health and Human Services], on behalf of States (except that, the Secretary may authorize a State to enter directly into agreements with a manufacturer) . . . ." 42 U.S.C. § 1396r–8(a)(1). Doc. 8, p. 7; Doc. 8, attachment B, is a copy of the federal statute.[1] The rebate is at least 15.1% of the "average manufacturer price," and could be more if the differential between that price and the manufacturer's nationwide "best price" is greater. *Id.*, p. 8.

In 1990, Congress abolished restrictive state Medicaid drug formularies. Doc. 8, p. 7 and n. 7. It appears undisputed also that it was Congressional intent to require drug manufacturers to give a 15.1% discount for drugs provided to state Medicaid programs and to require States which elected to cover prescription drugs in their Medicaid programs to "cover all products on which rebates are available." *Id.*, n. 8, quoting Representative Waxman in 1993.

---

1. The memorandum, doc. 8, refers to the new Florida law, CS for CS for SB 72, as attachment A, and the federal statute, Social Security Act (SSA) § 1927 (42 U.S.C. § 1396r–8) as attachment B. These were not marked as such when filed, but the court has labeled them A and B. There are also other labeled attachments to doc. 8 in a separate folder in this file.

In 1993, Congress again amended the statutes, allowing States to established their own formularies. As amended, 42 U.S.C. § 1396r–8(d)(4) establishes the rules for State formularies. Paragraph (d)(4) provides that a "State may establish a formulary if the formulary meets the following requirements." The requirements are that the formulary be "developed by a committee consisting of [persons] appointed by the Governor of the State," that "the formulary includes the covered outpatient drugs of any manufacturer which has entered into and complies with an agreement under subsection (a) of this section [rebate agreements with the United States]," and that a drug may be excluded from the State formulary "only if" the drug "does not have a significant, clinically meaningful therapeutic advantage in terms of safety, effectiveness, or clinical outcome ...." § 1396r–8(d)(4)(A), (B), and (C). A fourth requirement for a state formulary is found in subparagraph (D) of paragraph (d)(4). That subparagraph provides that the State must permit a drug which has been "excluded from the formulary" to be covered "pursuant to a prior authorization program that is consistent with paragraph (5)."

Paragraph (d)(4) of the federal statute ends with this sentence: "A prior authorization program established by a State under paragraph (5) is *not a formulary subject to the requirements of this paragraph.*" (Emphasis added.) Subparagraph (5) then provides:

(5) Requirements of prior authorization programs

A State plan under this subchapter may require, as a condition of coverage or payment for a covered outpatient drug for which Federal financial participation is available in accordance with this section with respect to drugs dispensed on or after July 1, 1991, the approval of the drug before its dispensing for any medically accepted in-

dication ... only if the system providing for such approval -

(A) provides response by telephone or other telecommunication device with 24 hours of a request for prior authorization; and

(B) except with respect to the drugs on the list referred to in paragraph (2), provides for the dispensing of at least 72–hour supply of a covered outpatient prescription drug in any emergency situation (as defined by the Secretary).

42 U.S.C. § 1396r–8(d)(5)(A) and (B).

The Florida law which is challenged in this suit consists of sections 409.91195 and 409.912, Florida Statutes, as amended by Chapter 2001–104, Laws of Florida. The new law took effect on July 1, 2001. A copy of the enactment is attachment A to doc. 8.

Section 409.91195 has been amended to create a Medicaid Pharmaceutical and Therapeutics Committee within the Agency for Health Care Administration "for the purpose of developing a preferred drug formulary pursuant to 42 U.S.C. § 1396r–8." *Id.,* § 8, amending FLA. STAT. § 409.91195. Upon recommendation of the Committee, the Agency is to "adopt a preferred drug list." *Id.,* amending FLA. STAT. § 409.91195(4). The agency is authorized to negotiate "supplemental rebates" from manufacturers of "no less than 10 percent of the average manufacturer price" but no greater than 25 percent when combined with the federal rebate. *Id.,* § 9, amending FLA. STAT. § 409.912(37)(a)7. The new law provides that: "Agreement to pay the minimum supplemental rebate percentage will guarantee a manufacturer that the [Committee] will consider a product for inclusion on the preferred drug formulary." *Id.*

It is not disputed that Florida initially did not initially obtain approval of the Secretary of the Department of Health and Human Services before entering into these supplemental rebate agreements with manufacturers. Florida has argued that such approval is needed only if the State rebate agreements are in lieu of, rather supplemental to, the federal rebates. Doc. 20, affidavit of Bob Sharpe, ¶ 6. The Florida rebate program is supplemental according to Sharpe. *Id.* Attached to the affidavit of Sharpe is a letter from Charlene Brown, Deputy Director, Health Care Financing Administration, Department of Health and Human Services. Ms. Brown states that the Florida program "appears to describe a prior authorization program" rather than a "formulary" program. Ms. Brown also distinguishes between State rebates which are supplemental and those which supplant federal rebates.

Sharpe stated in his initial affidavit, however, that "a State plan amendment and a State supplemental rebate agreement have been submitted to CMS [Department of Health and Human Services] for approval." *Id.,* ¶ 6. On September 18, 2001, the Department of Health and Human Services approved Florida's program for obtaining supplemental rebates from drug manufacturers. It also approved the plan for requiring prior authorization for drugs for which no supplemental rebate agreement exists. Doc. 33 and ex. 1 (supplemental affidavit of Sharpe), ¶ 6, and ex. F. The approval was retroactively effective *nunc pro tunc* July 1, 2001. *Id.,* ex. F, p. 5.

Except for mental health drugs, antiretroviral drugs, and drugs for institutional residents, "reimbursement for drugs not included in the formulary is subject to prior authorization." *Id.,* amending FLA. STAT. § 409.91195(5). It is undisputed that Florida's "preferred drug list calls for the prior authorization of any drug that is not currently on the list." Doc. 19, p. 4.

Plaintiff contends that Florida will not place a drug on the preferred list if the manufacturer does not agree to the extra 10% rebate, unless the manufacturer's price is already at that level. Doc. 8, pp. 12–13, quoting Defendant Sharpe. Defendants disagree, citing the affidavit of George Kitchens: "Many drugs are on the Florida PDL [preferred drug list] even though the manufacturer has not entered into a supplemental rebate agreement with the State for these drugs." Doc. 20, affidavit of George Kitchens, ¶ 3. It is presumed that these are drugs for which the price is already at the 25% rebate level, but there is a dispute, or at least, a lack of clarity of fact as to this. This dispute of fact, however, is not material to this motion, since Plaintiff's complaint is aimed primarily at the exclusion of drugs from the preferred drug list and it is undisputed that many drugs are not on the list due to the failure of manufacturers to agree to Florida's 10% rebate. Indeed, as previously noted, at oral argument, Plaintiff conceded that there are no genuine disputes of material fact.

It is not disputed that the purpose of the prior authorization procedure is to encourage physicians to prescribe drugs on the preferred list, that is, drugs which are 10% less expensive to the Florida Medicaid program:

> The statute only calls for prior authorization of any drug that is not on the PDL [preferred drug list]. The authorization is guaranteed, but allows the State to make a prescribing physician aware of alternative prescription choices.

Doc. 20, affidavit of George Kitchens, ¶ 3. Under Florida's prior authorization program, each physician makes his or her own decision as [to] what to prescribe

for each patient. If the prescribed drug is not on the PDL, then the pharmacist consultant employed by ACS Consultec advises the physician of alternatives. . . . If the physician, after hearing these alternatives, still prefers his or her specific choice, then that choice is approved. There is no penalty for the decision to prescribe a non-PDL drug. The State will abide by the wishes of the treating physician.

*Id.,* ¶ 5. "Every drug available to Medicaid recipients prior to the passage of Chapter 2001–104, Laws of Florida, continues to be a covered drug under the PDL." *Id.,* ¶ 3.

It is recognized that Plaintiff's witnesses imply a different view as to the process, but the implication is not persuasive and does not create a dispute of fact. David Pickhardt states in his affidavit that "the prescription will not be covered under the plan or program without the administrator's approval." Doc. 8, attached affidavit of David Pickhardt. That is true, but the implication that the physician's choice will not be honored is untrue, as explained by Kitchens. On this record, the evidence is that the approval is automatic if the physician prefers the drug not on the preferred list.

Florida has hired an agent, ACS Consultec, to operate the prior authorization system. Doc. 20, affidavit of George Kitchens, ¶ 4. The "system" contemplates that ACS Consultec will provide an authorization within 24 hours of a request, and will dispense a 72 hour supply of the medication in emergency situations. *Id.* "The average communication time for a physician to obtain approval under the Florida PDL [preferred drug list] program is between 5 and 10 minutes." *Id.*

Plaintiff has shown that the market shares of a number of drugs of its members not on the preferred drug list have significantly fallen in recent months. Doc. 25, pp. 8–9. For example, the market share of Imitrex fell from 60% to 6%, the market share of Prilosec fell from 38% to 4%, and the market share of Allegra fell from 17% to 1%. *Id.*

The State list initially was adopted as a temporary preferred drug list. The new law directs that a Medicaid Pharmaceutical and Therapeutics Committee be appointed by the Governor. FLA. STAT. § 409.01195(1). "Until the Medicaid Pharmaceutical and Therapeutics Committee is appointed" by the Governor, "and a preferred drug list adopted by the agency," the existing "Florida Voluntary Preferred Drug List" shall be used as the interim list. FLA. STAT. § 409.01195(8). "Drugs not listed on the voluntary preferred drug list will require prior authorization by the agency or its contractor." *Id.* The temporary list went into effect on July 1, 2001, and will be phased out in stages as the permanent list is established. The temporary list has about 821 drugs from the federal list, or only about 44.9% of the federal list. Doc. 8, pp. 15–16. As noted above, about 1,006 drugs are subject to prior authorization.

The temporary list was adopted in June, 2001, by the existing Medicaid Pharmaceutical and Therapeutics Committee, which had appointees by not only the Governor, but by the presiding officers of the Florida House of Representatives and the Senate. FLA. STAT. § 409.91195(1) (2000) (prior to amendment). However, a properly constituted Pharmaceutical and Therapeutics Committee, appointed by the Governor, met on August 25, 2001. That Committee approved, ratified, and adopted the interim preferred drug list. Doc. 20, affidavit of Ronald Salem, Pharm. D., ¶¶ 1–4.

### III. Legal analysis

Defendants have not challenged Plaintiff's standing to bring this action, and there does not seem to be a standing prob-

lem which must be raised *sua sponte*. *See Florida Ass'n of Rehab. Facilities, Inc. v. State of Florida, Dept. of Health and Rehabilitative Serv.*, 225 F.3d 1208, 1216 n. 5 (11th Cir.2000); *Pirolo v. City of Clearwater*, 711 F.2d 1006 (11th Cir.1983); *Pharmaceutical Research and Mfrs. Of America v. Concannon*, 249 F.3d 66, 72–74(1st Cir.2001), *pet. for cert. filed*, 70 U.S.L.W. 3092 (July 31, 2001).

■ A preliminary injunction will not issue unless the Plaintiff satisfies the four prerequisites for a preliminary injunction:

1. A substantial likelihood that plaintiff will prevail on the merits,

2. A substantial threat that the plaintiff will suffer irreparable injury if the injunction is not granted,

3. The threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant,

4. And the granting of the preliminary injunction will not disserve the public interest.

*Canal Authority of Florida v. Callaway*, 489 F.2d 567 (5th Cir.1974). "The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits. It often happens that this purpose is furthered by preservation of the status quo, but not always. If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, [citation omitted] or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury." 489 F.2d at 576.

■ Likelihood of success on the merits should be addressed first, and that factor is dispositive here. Plaintiff contends that the new Florida law conflicts with Section 1927 of the Social Security Act, 42 U.S.C. § 1396r–8 and thus violates the Supremacy Clause. Plaintiff argues Florida's "preferred drug list" is actually a "formulary," and that the only drugs which a state may exclude from a "formulary" are those lacking a significant therapeutic value. Plaintiff argues that the Florida amendments conflict with the federal statute because these amendments allow drugs as to which the manufacturer has not agreed to the additional 10% rebate to be excluded from the list.[2]

■ "State action may be foreclosed by express language in a congressional enactment, *see, e.g., Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992), by implication from the depth and breadth of a congressional scheme that occupies the legislative field, *see, e.g., Fidelity Fed. Sav. & Loan Assn. v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), or by implication because of a conflict with a congressional enactment, *see, e.g., Geier v. American Honda Motor Co.*, 529 U.S. 861, 869–874, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000)." *Lorillard Tobacco Co. v. Reilly*,

2. Plaintiff had also argued that federal law authorizes a state to enter into a rebate agreement with a drug manufacturer only if the Secretary of the United States Department of Health and Human Services has authorized the state to do so. As noted above, the Secretary has now approved Florida's preferred drug list and program, effective July 1, 2001. Plaintiff conceded at oral argument that this basis for a preliminary injunction is now moot and it has been withdrawn. Plaintiff's third contention, that the Florida preferred drug list was adopted by an improperly constituted committee, is also moot, and Plaintiff so concedes. Doc. 25, p. 6, n. 7. As will be explained, a new committee, appointed by the Governor, has adopted and ratified Florida's drug list. Plaintiff withdrew this claim at oral argument.

533 U.S. 525, 121 S.Ct. 2404, 2414, 150 L.Ed.2d 532 (2001).

■ Plaintiff does not argue express preemption. Nor does Plaintiff argue preemption by implication because the federal law occupies the field.[3] Plaintiff's claims rest upon the third type, conflict with federal law.

> "Such a conflict arises when 'compliance with both federal and state regulations is a physical impossibility,' ... or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress...." *Hillsborough County, Fla. v. Auto. Med.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985) (citations omitted).

*Dietrich v. Key Bank, N.A.*, 72 F.3d 1509, 1513–1514(11th Cir.1996).

Since the Medicaid program is a joint federal and state effort, funded almost equally by both parties, it is expected that States may be afforded some latitude in the way in which they provide Medicaid to beneficiaries within their States:

> No state is obligated to participate in the Medicaid program. If a state opts to participate in the Medicaid program, however, it must do so in a manner that complies with federal statutory and regulatory requirements. *See* § 42 U.S.C. 1396n. Within the general framework of federal law, states that choose to participate in the Medicaid program (thus qualifying for federal financial aid covering the medical assistance costs of eligible individuals) are granted broad latitude in defining the scope of covered services as well as many other key characteristics of their programs.

*Florida Ass'n of Rehab. Facilities, Inc.*, 225 F.3d at 1211.

> [F]ederal preemption of a state law is "strong medicine," and is "not casually to be dispensed." ... This is especially true when the federal statute creates a program, such as Medicaid, that utilizes "cooperative federalism": "Where coordinated state and federal efforts exist within a complementary administrative framework, and in the pursuit of common purposes, the case for federal preemption becomes a less persuasive one."

*Concannon*, 249 F.3d at 75 (citations omitted).

*Concannon* is the only similar case to provide some guidance to the court. In *Concannon*, the State of Maine had established a program to lower drug costs to persons *not* covered by Medicaid. The statute allowed State officials to negotiate rebate agreements with drug manufacturers with the goal of obtaining a rebate in the same amount as the federal Medicaid rebate, 15.1%. 249 F.3d at 71. The rebate was then to be used to lower drug costs to persons not covered by Medicaid who elected to participate in the program. To encourage these rebate agreements, the drugs of manufacturers who refused to enter into such rebate agreements were subject to "prior authorization" under the Maine Medicaid program. *Id.* at 72. The court held that, as a facial challenge, the Maine program was not preempted by the federal Medicaid law. *Id.* at 78–79.

---

**3.** We can infer an "intent to occupy a given field to the exclusion of

state law ... where the pervasiveness of the federal regulation precludes supplementation by the States" or "where the federal interest in the field is sufficiently dominant...." *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300, 108 S.Ct. 1145,

1150, 99 L.Ed.2d 316 (1988). We can also infer an intent to preempt where " 'the object sought to be obtained by the federal law and the character of the obligations imposed by it' " reveal a purpose to preclude the enforcement of the state laws on the same subject. *Id.* (citation omitted). *Dietrich v. Key Bank, N.A.*, 72 F.3d at 1514.

Plaintiff contends that the Florida drug "list" is a "formulary" as that word is used in 42 U.S.C. § 1396r–8(d)(4). Plaintiff argues that the Florida Statutes reflect an intent to create a drug formulary as intended by § 1396r–8(d)(4) because the amended statutes use the word "formulary." The Florida statutes use the phrases "preferred drug formulary" and "preferred drug list" interchangeably.[4] *E.g.,* FLA. STAT. § 409.91195(1), (4), (5), (6), (7), (8), (9), (11). Sometimes the first phrase is used (subsections (1), (5), and (6)), sometimes the second is used (subsections (7) and (8)), and sometimes both are used interchangeably in the same subsection (subsections (4) and (9)). Thus, while it would appear that the law intends a "preferred drug list" to be a "formulary," it would appear equally true that the Florida Statutes intend any "formulary" to be a "preferred drug list." Since the words are used so interchangeably, little can be inferred from the choice of words. Defendants, who are charged with implementing this Florida program, have interpreted the statute in the manner in which they have implemented it, and their interpretation is entitled to some deference.

Plaintiff argues that the Florida "list" is a "formulary" as intended by federal law because FLA. STAT. § 409.912(37)(a)(7) authorizes the agency to establish a "preferred drug formulary in accordance with 42 U.S.C. § 1396r–8." The problem with this argument is how the Florida Statute intends the phrase "preferred drug formulary" to be read. As indicated above, Florida law interchangeably uses the phrase "preferred drug formulary" to mean a "preferred drug list." Further, the reference is to section 1396r–8 generally, and not specifically to subsection (d)(4), in which the federal drug formulary is described. It is true that it is only in subsection (d)(4) that the federal law makes any reference to a "formulary," but since Florida law equates a "formulary" with a "preferred drug list," one cannot be sure that the Florida law is aimed only at the concept of a "drug formulary" as intended by subsection (d)(4).

All of this, however, does not lead to the light. Instead, it is more profitable to observe that 42 U.S.C. § 1396r–8(d) (in which, obviously, (d)(4) is found) is entitled "Limitations on coverage of drugs." Subsection (d)(1)(A) states in part that "A State may subject to prior authorization any covered outpatient drug. Any such prior authorization program shall comply with the requirements of paragraph (5)." *Moreover,* 42 U.S.C. § 1396r–8(d)(4) states: "A prior authorization program established by a State under paragraph (5) is *not a formulary subject to the requirements of this paragraph.*" (Emphasis added.) Subparagraph (5) authorizes a State to create a "prior authorization program" to determine "coverage or payment for a covered outpatient drug for which Federal financial participation is available in accordance with this section [section (4), concerning the federal drug formulary]. . . ."

The Florida program operates only as a prior authorization program. All of the drugs for which there are manufacturers' rebate agreements with the federal government are included in Florida's program, either on the preferred list, or when requested by a physician. Requests are automatically granted. Indeed, strictly speaking, the Florida program is not even an "authorization" program. It is only a

---

**4.** The title to Committee Substitute for Committee Substitute for Senate Bill 792, which became Chapter 2001–104, Laws of Florida, announces that the amendment to FLA. STAT.

§ 409.91195 will require the establishment of a "preferred drug formulary." Doc. 8, attachment A.

program by which the State informs physicians of preferred, less expensive drugs. After this advice is given, the physician is permitted to prescribe drugs covered under the federal formulary but not on the Florida preferred drug list, if the physician prefers.

Thus, the Florida program does not invoke the authority of section 1396r–8(d)(4)(C) to exclude any drug from the federal drug formulary (that is, drugs without significant therapeutic advantage). The Committee created by the Florida Statute has simply adopted the federal drug formulary, and then added a prior authorization component.

That drugs, not on the preferred list and subject to prior authorization, have lost market share, is irrelevant here. The federal law does not purport to guarantee a market share. It only requires that a State Medicaid program make available all of the drugs on the federal drug formulary.

That the process is cumbersome for physicians, or may deter them from prescribing drugs not on the State's preferred list, is of no moment to this Supremacy law claim, either. The evidence is that it takes only five or ten minutes for a physician to make the contact and obtain automatic approval. Federal law does not proscribe State programs which add steps to the process in the furtherance of legitimate State interests, particularly where the steps (prior authorization) are expressly permitted by federal law.

Nor, as a general matter, is the purpose of the prior authorization program antithetical to the Medicaid program. The purpose for which prior authorization is required is related to the goals of the

Medicaid program, to provide drugs to Medicaid beneficiaries at the lowest cost possible.[5]

Plaintiff had argued that the Florida law establishes a Medicaid Pharmaceutical and Therapeutics Committee to be "comprised as specified in 42 U.S.C. § 1396r–8." FLA. STAT. § 409.91195(1). The law further provides that this Committee exists "for the purpose of developing a preferred drug formulary pursuant to 42 U.S.C. § 1396r–8." *Id.*, preamble. Upon recommendation of this Committee, the agency is to adopt a "preferred drug list." *Id.*, subsection (4). Plaintiff argues that the Florida law would not have insisted that this Committee be comprised as required by federal law if it did not intend the Committee to create a "formulary" as intended by § 1396r–8(d)(4). As noted above, one of the three requirements of federal law for the adoption of a state "formulary" under subsection (d)(4) is that it be developed by a committee of specified types of persons appointed by the Governor. 42 U.S.C. § 1396r–8(d)(4)(A). But the Committee has adopted the federal drug formulary in toto. It has not excluded any drug. If in the future it chooses to exclude a drug without significant therapeutic value as authorized by 42 U.S.C. § 1396r–8(d)(4)(C), it may do so because it is properly comprised. Further, there is nothing in the federal law that prohibits a Committee comprised in this way to have other functions, here, to adopt a preferred drug list with a prior authorization component.

Plaintiff argues that the federal statute provides that if a State *excludes* a drug for lack of significant therapeutic value, it must still make the drug available pursu-

---

**5.** In *Concannon,* the court said that it was "not convinced that the Medicaid statute is concerned with the motivation behind imposing prior authorization, as long as the 24–hour response and the 72–hour drug-supply requirements, 42 U.S.C. § 1396r–8(d)(5), are satisfied." 249 F.3d at 76. Here, unlike in that case, there is a clear Florida Medicaid purpose served by the prior authorization program.

ant to the prior authorization program. Plaintiff argues from this that a prior authorization program is permitted for only this purpose, and not for the purpose adopted by Florida. But Plaintiff has pointed to nothing in the federal law which prohibits Florida from creating a prior authorization program for another purpose. Indeed, section (d)(4) takes pains to state that a prior authorization program is not a drug formulary as defined in section (d)(4), implying that a prior authorization program may be adopted to serve State purposes, purposes which may be different from federal purposes.

Nor has Plaintiff pointed to any portion of the federal law which forbids a State from seeking additional rebates from drug manufacturers. In the absence of a specific federal statutory provision, a State should be free, as any buyer in the market place, to try to obtain the best prices it can.

Finally, it is noted that since the federal statute commits the regulation of the Medicaid program to the Secretary, and specifically authorizes the Secretary to permit States to enter into rebate agreements with drug manufacturers, it would appear that the Secretary's interpretation of the interaction of the federal Medicaid statute with Florida's law is entitled to at least some deference. *United States v. Mead Corp.*, 533 U.S. 218, 121 S.Ct. 2164, 2171–2172, 150 L.Ed.2d 292 (2001). It would appear that the Secretary has considered these same issues and has reached the conclusion that the Florida law does not conflict with the federal law.

In summary, Plaintiff has not shown that "compliance with both federal and state regulations is a physical impossibility," or that the Florida law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" *Dietrich v. Key Bank, N.A.*, 72 F.3d at 1513–1514. Since Plaintiff has not shown a substantial likelihood of success, the motion for a preliminary injunction should be denied.

For these reasons, it is **RECOMMENDED** that Plaintiff's motion for a preliminary injunction, doc. 7, be **DENIED**.

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**